# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

In re:

LAS UVAS VALLEY DAIRIES,          Bankruptcy Case No. 17-12356-t11

      Debtor.

---

DOÑA ANA COUNTY TREASURER,

        Appellant,

v.                      U.S.D.C. No. 2:20-cv-1014 JB/KK

ROBERT MARCUS, Successor Liquidating
Trustee of Las Uvas Valley Dairies Liquidating
Trust,

        Appellee.

## **PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER is before the Court on Appellant Doña Ana County Treasurer's ("County")[1] appeal from the Order Denying Motion to Amend Proof of Claim and Application for Payment of Administrative Expenses ("Order") and supporting Opinion entered by the United States Bankruptcy Court for the District of New Mexico on September 18, 2020. (Doc. 1-1 at 1; Doc. 5 at 201-13, 216.) The Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 158. United States District Judge James O. Browning referred the appeal to the undersigned for proposed findings and a recommended disposition pursuant to 28 U.S.C. § 636(b). (Doc. 2.) For

---

[1] Appellant Doña Ana County Treasurer is acting for the benefit of Doña Ana County in this appeal. *See* N.M. Stat. Ann. § 4-46-1 ("[C]ounty officers, when authorized by law" may "su[e] in their name of office for the benefit of the county."). As such, and for lucidity, the Court will refer to the Treasurer and the County interchangeably as "the County."

the reasons set forth below, the Court recommends that the Bankruptcy Court's Order and Opinion

be affirmed in part, reversed in part, and remanded as set forth below.

## I.    STANDARD OF REVIEW

In general, "[a] bankruptcy court's legal conclusions are reviewed de novo, while its factual

findings are reviewed for clear error." *In re Long*, 843 F.3d 871, 873 (10th Cir. 2016). The Court

discusses specific standards of review applicable to the issues raised in this appeal in its analysis.

## II.    BACKGROUND[2]

Las Uvas Valley Dairies ("Debtor") operated a dairy in Doña Ana County, New Mexico.

(Doc. 5 at 201.) It owned, *inter alia*, real property and livestock subject to taxation by the County.

(Doc. 3 at 4-31; Doc. 5 at 22, 35-36, 39-40, 140, 201-03.) On September 15, 2017, Debtor filed a

voluntary petition for relief under Chapter 11 of the Bankruptcy Code. (BR[3] Doc. 1; Doc. 4 at 1;

Doc. 5 at 201-02.) Debtor listed the County as one of its creditors. (BR Doc. 1 at 7.)

On October 18, 2017, the County filed a proof of claim alleging Debtor owed it

$234,816.03 ("Proof of Claim"). (Doc. 3.) The first page, a form "proof of claim," indicated the

basis of the claim was "[r]eal [p]roperty" and listed the entire amount as "[s]ecured[.]" (*Id.* at 3.)

However, the form also indicated a portion of the claim consisted of "[t]axes or penalties owed to

---

[2] Factual findings of the Bankruptcy Court on which the Court relies herein are undisputed. *See, e.g.*, *In re Anderson*, No. 08-20339 EEB, 2010 WL 3843608, at *1 (D. Colo. Sept. 27, 2010) ("[b]orrowing liberally from the bankruptcy court's . . . findings of fact" where the parties "d[id] not challenge" them). The Court also "take[s] judicial notice of [certain] court records in the underlying proceedings" not included in the record on appeal. *Gee v. Pacheco*, 627 F.3d 1178, 1191 (10th Cir. 2010); *see also In re McDaniel*, 973 F.3d 1083, 1087 n.3 (10th Cir. 2020) (taking judicial notice of records in bankruptcy court's file on appeal); *cf. In re Schupbach*, 607 F. App'x 831, 838 (10th Cir. 2015) (bankruptcy appellate panel did not err in taking judicial notice of document on bankruptcy court's docket on appeal).

[3] Citations to "BR" refer to filings in the underlying bankruptcy case, Case No. 17-12356-t11.

governmental units" "[e]ntitled to [p]riority" under "11 U.S.C. § 507(a)(8)."[4] (*Id.*) The remainder of the Proof of Claim consisted of tax bills addressed to Debtor. (*Id.* at 5-31.) The bills listed taxes, interest, and fees owed for 2016 and 2017 and indicated the taxed property consisted of "Agricultural Land[,]" "Residential Mobile Home Improvement[,]" "Non-Residential Land[,]" "Residential Improvement[,]" "Non-Residential Improvement[,]" and "Residential Land[.]" (*Id.*)

Although Debtor filed its petition under Chapter 11, it was ultimately unable to reorganize. (Doc. 5 at 202.) Thus, in May 2018, the Unsecured Creditors Committee and Debtor's two largest secured creditors—Metropolitan Life Insurance Company ("MetLife") and Production Credit Association of Southern New Mexico—proposed that a liquidating trustee sell all of Debtor's assets pursuant to their First Amended Chapter 11 Plan of Liquidation ("Chapter 11 Plan"). (Doc. 4 at 9-67; Doc. 5 at 202.)

The Chapter 11 Plan provided that the net proceeds from the sale of Debtor's assets would go to creditors according to the Bankruptcy Code's priorities, but that unsecured creditors would receive at least $1 million "to be shared pro rata[.]" (Doc. 4 at 9.) The plan incorporated a previously set deadline of March 14, 2018 for governmental entities to file proofs of claim, which it referred to as the "Bar Date for governmental entities[.]"[5] (*Id.* at 12.) It also set a deadline for

---

[4] Section 507(a)(8) enumerates "allowed unsecured claims of governmental units" entitled to priority, including those for "a property tax incurred before the commencement of the case and last payable without penalty after one year before the date of the filing of the petition." 11 U.S.C. § 507(a)(8)(B).

[5] Pursuant to the Bankruptcy Court's order (BR Doc. 102), Debtor issued a notice setting the Bar Date for governmental entities as "the later of i) the General Claims Bar Date [of January 3, 2018]; or (ii) 180 days after the date of the order of relief." (BR Doc. 103.) By statute, a voluntary petition "constitutes an order for relief." 11 U.S.C. § 301(b). Thus, Debtor's notice set the Bar Date for governmental entities as the later of January 3, 2018 or 180 days after Debtor filed its voluntary petition on September 15, 2017, *i.e.*, March 14, 2018. The County was served with Debtor's notice on November 17, 2017. (BR Doc. 103 at 3; BR Doc. 103-2 at 2.)

filing notices of most "[a]dministrative [c]laim[s],"[6] *i.e.*, 90 calendar days plus 3 business days after the Bankruptcy Court confirmed the plan. (*Id.* at 10, 15, 32.) The plan referred to this deadline as the Administrative Claims Bar Date. (*Id.* at 10.)

On May 9, 2018, the Bankruptcy Court set a deadline of June 6, 2018 to object to the Chapter 11 Plan. (BR Doc. 378 at 1.) The court also scheduled a confirmation hearing to begin on June 13, 2018. (*Id.* at 2.) The plan and the order setting the deadline and hearing were served on the County on May 11, 2018. (Doc. 4 at 68, 71.) The County did not object to the plan and did not attend the confirmation hearing, which was held on June 13 and 14, 2018. (BR Docs. 442, 443.)

On June 14, 2018, the Bankruptcy Court entered its order confirming the Chapter 11 Plan with modifications ("Confirmation Order"). (Doc. 4 at 83-120.) The Confirmation Order did not modify the Bar Date for governmental entities, which remained March 14, 2018. (*See generally id.*) It did, however, set a shorter deadline for notices of most administrative claims, which were to be filed within 15 days of the order's entry. (*Id.* at 87, 91.) The County asserts it "has no record of actually receiving the [C]onfirmation [O]rder until its counsel . . . retrieved it from the Bankruptcy Court docket in late 2019" upon receiving a claim objection from Appellee Robert Marcus. (Doc. 15 at 16-17.) Moreover, the Bankruptcy Court confirmed "[i]t is not clear the County received notice of the [C]onfirmation [O]rder." (Doc. 5 at 202 n.3; *see also* Doc. 4 at 121-22 (listing recipients of notice of Confirmation Order); BR Doc. 441 (same).)

---

[6] The Chapter 11 Plan defined the term "[a]dministrative [c]laim" as "the collective reference to all costs and expenses of administration of the [c]ase with priority under [11 U.S.C. §§] 364(b) and/or 507(a)(2) . . . , including . . . any cost or expense . . . arising or allowable under [11 U.S.C. §] 503(b)." (Doc. 4 at 10.) As discussed at greater length below, under Section 503(b), taxes must be "incurred by the estate" to be administrative expenses. 11 U.S.C. § 503(b)(1)(B)(i). "However, until the petition is filed, there can be no estate[.]" *In re Sunnyside Coal Co.*, 146 F.3d 1273, 1278 (10th Cir. 1998). Thus, only post-petition taxes can be administrative expenses. *Id.*

In July 2018, Mr. Marcus accepted appointment as successor liquidating trustee. (BR Doc. 493.) Mr. Marcus auctioned off Debtor's livestock in the summer of 2018. (Doc. 5 at 101.) In March 2019, he sold Debtor's real property and paid the County all taxes, interest, and penalties owed on that property. (*Id.* at 22, 203.) As a result, all amounts stated in the County's Proof of Claim were paid except for $8,877.22, "which was identified as a tax on personal property." (*Id.* at 21-22.) Also in March 2019, a County employee notified Mr. Marcus by e-mail that the County "still had a claim for personal property taxes far in excess of $8,877.22." (*Id.* at 23, 114.) "The claims asserted . . . in the email were for 2017 as well as 2018 personal property taxes on the cattle which had been sold the previous year." (*Id.* at 23.) The County did not file a claim for the taxes referenced in the e-mail or otherwise seek relief from the Court at that time. (*Id.* at 203.)

"After extensive, arm's-length negotiations," Mr. Marcus reached a settlement with MetLife in May 2019, which the Bankruptcy Court approved in July 2019. (BR Doc. 531 at 6; Doc. 4 at 176-209; Doc. 5 at 203.) The parties then brought to the Bankruptcy Court's attention the issue of whether the County should be allowed to claim personal property taxes, interest, and fees on Debtor's livestock for 2017 ("2017 Livestock Taxes") and 2018 ("2018 Livestock Taxes"). Specifically, on November 22, 2019, Mr. Marcus filed a Partial Objection to Claim asserting that the County's "claim had been paid except for $8,877.22," and asking the Bankruptcy Court "to declare that the estate owed [the County] $8,877.22 or less." (Doc. 5 at 21-26, 203.) On December 23, 2019, the County filed a response in opposition to Mr. Marcus' Partial Objection to Claim, attaching tax bills showing Debtor owed $471,816.85 in personal property taxes, interest, and fees

for the years 2016, 2017, and 2018.[7] (*Id.* at 29-40.) With the Bankruptcy Court's leave, the County

filed an amended response on February 24, 2020. (*Id.* at 56, 59-65.)

 The parties also filed cross-motions for summary judgment. (*Id.* at 66-103.) After

reviewing these motions, the Bankruptcy Court "determined that proper procedure was for the

County to seek permission to amend its proof of claim and/or apply for an administrative expense."

(*Id.* at 137-38, 203.) The County did so; Mr. Marcus objected; and, the County replied. (*Id.* at 172-

83, 203-04.)

 After a hearing, the Bankruptcy Court issued the Opinion and Order at issue in this appeal.

(*Id.* at 201-16.) In its Opinion, the Bankruptcy Court first concluded that the 2017 Livestock Taxes

were incurred before Debtor's petition was filed and were thus a pre-petition claim subject to the

Chapter 11 Plan's Bar Date for governmental entities. (*Id.* at 204-05.) The Bankruptcy Court then

rejected the County's arguments that the 2017 Livestock Taxes should be allowed as either an

amendment relating back to the County's timely Proof of Claim or a new claim filed out of time.

(*Id.* at 205-10.) Finally, the Bankruptcy Court rejected the County's argument that its claim for the

2018 Livestock Taxes should be allowed as a post-petition administrative expense, because the

County did not file a notice of claim for these taxes by the Administrative Claims Bar Date. (*Id.* at

210-12.) Thus, the Bankruptcy Court disallowed the County's claims for both the 2017 and 2018

Livestock Taxes. (*Id.* at 212-13.)

---

[7] Mr. Marcus does not dispute that the County should be paid $8,877.22 for the 2016 personal property taxes included in its Proof of Claim. (Doc. 5 at 21-25.) It is unclear whether Mr. Marcus objects to paying interest and fees on these taxes. (*See id.*) However, the Bankruptcy Court did not address this issue in its Opinion and the County does not raise it in either of its briefs on appeal. (Doc. 5 at 201-13; Docs. 15, 17.) As such, the Court will not consider it here. Rather, the Court will limit its review to the County's claims for the 2017 and 2018 Livestock Taxes.

The County filed a Notice of Appeal in this Court on October 5, 2020 and filed its opening brief on January 14, 2021. (Docs. 1, 15.) On February 25, 2021, Mr. Marcus filed his response brief; and, on March 15, 2021, the County filed its reply. (Docs. 16, 17.) The County's appeal is thus fully briefed and ready for decision.

## III.    DISCUSSION

The County first argues that the Bankruptcy Court erred when it concluded that the 2017 Livestock Taxes were incurred pre-petition. (Doc. 15 at 23-26.) Rather, the County continues, the Bankruptcy Court should have allowed the County to claim the 2017 Livestock Taxes as a post-petition administrative expense. Alternatively, the County argues that if the 2017 Livestock Taxes were in fact incurred pre-petition, then the Bankruptcy Court should have allowed it to either (1) amend its timely Proof of Claim to include the 2017 Livestock Taxes or (2) file a new claim for these taxes out of time on the basis of excusable neglect. (*Id.* at 26-30.) Finally, the County argues that its claims for the 2017 and 2018 Livestock Taxes should have been allowed as administrative claims for post-petition expenses because the Chapter 11 Plan's Administrative Claims Bar Date does not apply to the County, and if it does, it should not be enforced because it violates the Bankruptcy Code. (*Id.* at 31-35.)

As explained below, this Court agrees with the Bankruptcy Court that the 2017 Livestock Taxes were incurred pre-petition and so cannot be claimed as a post-petition administrative expense. The Court also agrees that the County cannot amend its timely Proof of Claim to add the 2017 Livestock Taxes because its claim for these taxes is a new one that does not relate back to the original filing. However, the Bankruptcy Court made two clearly erroneous factual findings in concluding that the County should not be allowed to file a new claim for the 2017 Livestock Taxes

out of time, and these errors were not harmless. In addition, the Bankruptcy Court erred in rejecting the County's administrative claim for the 2018 Livestock Taxes as untimely. The Court therefore recommends that the Bankruptcy Court's Opinion and Order be affirmed in part, reversed in part, and remanded for further consideration as described herein.

## A.   The Bankruptcy Court correctly determined that the 2017 Livestock Taxes were incurred pre-petition.

The County first argues the Bankruptcy Court erred in determining that the 2017 Livestock Taxes were incurred pre-petition and so cannot be claimed as a post-petition administrative expense. (Doc. 15 at 23-26.) The Court considers this legal question *de novo*. *In re Long*, 843 F.3d at 873. "[C]osts incurred in the preservation of a bankrupt business . . . are payable as administrative expenses." *Peters v. Pikes Peak Musicians Ass'n*, 462 F.3d 1265, 1268 (10th Cir. 2006). Such expenses include "any tax . . . incurred by the estate, whether secured or unsecured, including property taxes for which liability is in rem, in personam, or both." 11 U.S.C. § 503(b)(1)(B)(i).[8] As the Tenth Circuit has explained, "[o]nly taxes 'incurred by the estate' are administrative expenses entitled to first priority under [11 U.S.C.] § 507(a)(1)."[9] *In re Sunnyside Coal Co.*, 146 F.3d 1273, 1278 (10th Cir. 1998). "However, until the petition is filed, there can be

---

[8] Administrative expenses under Section 503(b)(1)(B)(i) do not include taxes "of a kind specified in [11 U.S.C. § 507(a)(8)]." 11 U.S.C. § 503(b)(1)(B)(i). Section 507(a)(8), in turn, enumerates "allowed unsecured claims of governmental units" entitled to priority, including those for "a property tax incurred before the commencement of the case and last payable without penalty after one year before the date of the filing of the petition." 11 U.S.C. § 507(a)(8)(B).

[9] Section 507(a) has since been amended such that administrative expenses allowed under Section 503(b), including property taxes incurred by the estate under Section 503(b)(1)(B)(i), are now given second priority under Section 507(a)(2) rather than first priority under Section 507(a)(1). 11 U.S.C. § 507(a)(2).

no estate"; thus, only taxes incurred after the petition is filed are administrative expenses entitled to priority. *Id.*

"Although the Bankruptcy Code does not define the term 'incurred,' the Circuits addressing the issue have uniformly held a tax is incurred when it accrues," *In re Bayly Corp.*, 163 F.3d 1205, 1210 (10th Cir. 1998), rather than when it is "assessed" or "becomes payable." *Matter of Midland Indus. Serv. Corp.*, 35 F.3d 164, 166–67 (5th Cir. 1994). Thus, for example, "claims for real estate taxes that accrue during the pre-petition tax year but that are not calculated or do not become payable until a post-petition date are still considered pre-petition claims." *In re Bayly Corp.*, 163 F.3d at 1209. These principles accord with the definition of a "claim" under the Bankruptcy Code, *i.e.*, a "right to payment, whether or not such right is reduced to judgment, liquidated, *unliquidated*, fixed, contingent, matured, *unmatured*, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A) (emphases added); *see also Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991) ("right to payment" under Section 101(5)(A) "means nothing more nor less than an enforceable obligation") (brackets omitted).

In accordance with the foregoing authorities, to determine when the 2017 Livestock Taxes were "incurred," the Court must determine when they "accrued," *i.e.*, "when the event that trigger[ed] liability . . . occurred." *Matter of Midland Indus. Serv. Corp.*, 35 F.3d at 167. The question of when a state or local tax accrues "is determined by state law." *Id.* at 166. Under New Mexico law,

> [p]roperty taxes imposed are the personal obligation of the person owning the property on the date on which the property was subject to valuation for property taxation purposes and a personal judgment may be rendered against him for the payment of property taxes that are delinquent together with any penalty and interest on the delinquent taxes. The sale or transfer of property after its valuation date does

> not relieve the former owner of personal liability for the property taxes imposed for
> that tax year.

N.M. Stat. Ann. § 7-38-47. New Mexico law further provides that "[a]ll livestock located in the

state on January 1 of the tax year shall be valued for property taxation purposes as of January 1."

N.M. Stat. Ann. § 7-36-21(A).

      As the Bankruptcy Court determined, Sections 7-38-47 and 7-36-21 indicate that the 2017

Livestock Taxes accrued pre-petition. (Doc. 5 at 205.) Under these statutory provisions, personal

property taxes for livestock Debtor owned on the date the livestock was subject to valuation, *i.e.*,

January 1, became Debtor's personal obligation on that date, regardless of any subsequent sale or

transfer. N.M. Stat. Ann. §§ 7-38-47, 7-36-21(A). In other words, the event that triggered liability

for the 2017 Livestock Taxes—*i.e.*, Debtor's ownership of the livestock to be taxed—occurred on

January 1, 2017. *Matter of Midland Indus. Serv. Corp.*, 35 F.3d at 167; N.M. Stat. Ann. §§ 7-38-

47, 7-36-21(A). Thus, the 2017 Livestock Taxes accrued, and were incurred, well before Debtor

filed its petition on September 15, 2017. *In re Bayly Corp.*, 163 F.3d at 1210.

      The County argues the Bankruptcy Court should have found the 2017 Livestock Taxes

were incurred post-petition because, although the livestock was valued for property taxation

purposes "as of" January 1, 2017, it was not "actually valued" for these purposes until October 1,

2017, after tax rates for 2017 had been set. (Doc. 15 at 24-25.) According to the County, Section

7-38-47 does not impose a personal obligation on the owner of property until the property is

actually valued. (*Id.*) The County therefore argues the 2017 Livestock Taxes did not accrue until

October 1, 2017, *after* Debtor filed its petition. (*Id.*)

      The Court disagrees. As previously discussed, Section 7-38-47 imposes a personal

obligation to pay property taxes on the person who owns the property on the date it is "subject to

valuation for property taxation purposes." N.M. Stat. Ann. § 7-38-47. The Court rejects the County's suggestion that the date property is "subject to valuation" is the date on which it is "actually valued." (Doc. 15 at 24-25.) First, giving these two phrases their ordinary meaning, they are conceptually distinct. *See Marbob Energy Corp. v. New Mexico Oil Conservation Comm'n*, 2009-NMSC-013, ¶ 9, 146 N.M. 24, 28, 206 P.3d 135, 139 (in construing a statute, courts "look first to the plain language of the statute, giving the words their ordinary meaning, unless the Legislature indicates a different one was intended").

Second, both Section 7-38-47 and Section 7-36-21 use the term "valuation date," the former to refer to the date property is "subject to valuation" and the latter to refer to January 1 for in-state livestock. N.M. Stat. Ann. § 7-38-47; N.M. Stat. Ann. § 7-36-21(A), (C). "[T]he normal rule of statutory construction assumes that identical words used in different parts of the same act are intended to have the same meaning."[10] *In re Woods*, 743 F.3d 689, 697 (10th Cir. 2014) (internal quotation marks omitted); *see also Consolidation Coal Co. v. Dir., Off. of Workers' Comp. Programs*, 864 F.3d 1142, 1147 (10th Cir. 2017) ("Under settled canons of statutory construction, we presume that identical terms in the same statute have the same meaning."); *Hinsley v. CreditBox.com, LLC*, No. 2:21-CV-00281-WJ-GJF, 2021 WL 3048457, at *4 (D.N.M. July 20, 2021) ("[T]erms which are identical are presumed to bear the same meaning throughout a text[.]") (quoting *Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 963 (11th Cir. 2016)) (quotation marks omitted). Thus, it is appropriate to presume that the term "valuation date" refers

---

[10] Sections 7-36-21 and 7-38-47 are both part of New Mexico's "Property Tax Code," which "was enacted originally in 1973, 1973 N.M.Laws, ch. 258." *Cano v. Lovato*, 1986-NMCA-043, ¶ 18, 105 N.M. 522, 527, 734 P.2d 762, 767.

to the same date in both sections, equating the date in-state livestock is "subject to valuation" with January 1.

In maintaining that the 2017 Livestock Taxes were nevertheless incurred post-petition, the County relies on *In re Federated Department Stores, Inc.*, 270 F.3d 994 (6th Cir. 2001), in which the Sixth Circuit found that certain property taxes were post-petition administrative expenses. According to the County, the New York tax provisions at issue in that case were "very similar" to those at issue here. (Doc. 15 at 25.) In fact, however, there is a key difference between them. Specifically, in *In re Federated Department Stores*, the city "acquired an in rem interest" in the property to be taxed pre-petition, but "did not acquire an in personam right to payment from the debtor" until *after* the debtor's petition had been filed. 270 F.3d at 1003-04. Here, in contrast, the County acquired an in personam right to payment of the 2017 Livestock Taxes from Debtor *before* the petition was filed. N.M. Stat. Ann. §§ 7-38-47, 7-36-21(A). As the Bankruptcy Court observed, "[t]he County probably is correct that the 2017 [Livestock Taxes] were . . . unliquidated on the petition date, but that is irrelevant; the issue is when Debtor became liable to pay the tax." (Doc. 5 at 205.) For these reasons, the Court recommends affirmance of the Bankruptcy Court's Opinion to the extent it holds that the 2017 Livestock Taxes were incurred pre-petition and could not be claimed as a post-petition administrative expense under 11 U.S.C. §§ 503(b)(1) and 507(a)(2).

**B.      The Bankruptcy Court correctly concluded that the County's claim for the 2017 Livestock Taxes is a new claim that cannot be added by amendment.**

The County next argues that the Bankruptcy Court erred in concluding that its claim for the 2017 Livestock Taxes is a new claim that it cannot add by amending its timely Proof of Claim.

(Doc. 15 at 26-27.) The Court reviews this legal question *de novo*. *In re Unioil, Inc.*, 962 F.2d 988, 992 (10th Cir. 1992) ("*In re Unioil II*").

Federal Rule of Civil Procedure 15 governs the amendment of pleadings in civil cases filed in this Court. Fed. R. Civ. P. 15. Federal Rule of Bankruptcy Procedure 7015 makes Rule 15 applicable in adversary proceedings under the Bankruptcy Code. Fed. R. Bankr. P. 7015; *Matter of Stavriotis*, 977 F.2d 1202, 1204 (7th Cir. 1992). "Ordinarily, the filing of an objection to a proof of claim is a contested matter, not an adversary proceeding." *Matter of Stavriotis*, 977 F.2d at 1204 (quotation marks and ellipses omitted). However, Federal Rule of Bankruptcy Procedure 9014 "permits a court, at its discretion, to extend [Bankruptcy] Rule 7015 to contested matters[.]" *Id.* As such, some courts have "[chosen] to apply [Bankruptcy] Rule 7015 by analogy" in deciding whether to permit a creditor to amend its proof of claim. *Id.*

Rule 15(c) is particularly pertinent to requests to amend a timely proof of claim after the bar date. Under Rule 15(c), "[a]n amendment to a pleading relates back to the date of the original pleading when," *inter alia*, "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B); *but see In re Peregrine Fin. Grp., Inc.*, No. 12 B 27488, 2015 WL 2237201, at *4 (Bankr. N.D. Ill. May 13, 2015), *aff'd sub nom. Secure Leverage Grp., Inc. v. Bodenstein*, 558 B.R. 226 (N.D. Ill. 2016)*, aff'd sub nom. In re Peregrine Fin. Grp., Inc.*, 866 F.3d 775 (7th Cir. 2017)*, as amended* (Aug. 8, 2017) ("[W]hile the standard in Rule 15(c) is generally applied to amendments to proofs of claim filed after the bar date, courts need not necessarily permit the amendment to relate back even if the standard in Rule 15(c) is met.").

13

The Tenth Circuit addressed amendments to proofs of claim in *In re Unioil II*, holding that, "[o]rdinarily, amendment of a proof of claim is freely permitted so long as the claim initially provided adequate notice of the existence, nature, and amount of the claim as well as the creditor's intent to hold the estate liable." 962 F.2d at 992. However, it added that courts "should not allow truly new claims to proceed under the guise of amendment." *Id.*; *see also In re Int'l Horizons, Inc.*, 751 F.2d 1213, 1216 (11th Cir. 1985) ("[T]he court must subject post bar date amendments to careful scrutiny to assure that there was no attempt to file a new claim under the guise of amendment.").

Thus,

> [i]n determining whether an amendment should be allowed, [*In re Unioil II*] set out a two-step test. The first component is a threshold issue of whether the original proof of claim is amendable at all. Only after the decision that the proof of claim may be amended does the court proceed to the second step of determining if the amendment should be allowed. If the amendment is not a disguised new proof of claim and is subject to allowance on equitable grounds, . . . courts should liberally allow amendment of a proof of claim where anything in the record justifies such action.

*In re CF&I Fabricators of Utah, Inc.*, No. 90B-26721, 1994 WL 637340, at *6 (Bankr. D. Utah Aug. 16, 1994) (quotation marks omitted).

The County contends its claim for the 2017 Livestock Taxes is not a truly new claim because it included 2016 personal property taxes on Debtor's livestock in its timely Proof of Claim.[11] (Doc. 15 at 26.) There is "a split of authority regarding whether a proof of claim that

---

[11] The Bankruptcy Court found no mention of a claim for personal property taxes in the County's Proof of Claim, deeming it to be for real property taxes only. (Doc. 5 at 207-08 & n.9.) As discussed in Section III.C., below, this finding is clearly erroneous and prevented the Bankruptcy Court from considering whether the 2016 personal property taxes included in the Proof of Claim were for livestock or some other type of personal property. Here and below, the County has argued that these taxes were for livestock, while Mr. Marcus has professed not to know what they were for but suggests possibly mobile homes. (*See, e.g.*, Doc. 6 at 25, 36; Doc. 15 at 16; Doc. 16 at 14.) In Section III.C., the Court recommends remand to the Bankruptcy Court so that it may resolve this factual dispute in the first instance.

asserts tax liability for additional quarters or additional years qualifies as an amendment of a prior timely filed claim." *In re Sunwest Hotel Corp.*, No. 92-40079-11, 1998 WL 982905, at \*9 (D. Kan. Sept. 29, 1998) (collecting cases); *see also In re Nelson*, No. 09-72651, 2012 WL 2415553, at \*5 n.5 (Bankr. N.D. Ill. June 26, 2012) ("There is a split of authority regarding whether an amended proof of claim adding a tax liability for additional years or quarters relates back to a timely filed claim that does not include such tax year or quarter."); *In re PT-1 Commc'ns, Inc.*, 292 B.R. 482, 487 (Bankr. E.D.N.Y. 2003) ("Although bankruptcy courts are split on the issue, several courts have ruled that a purported amendment that asserts a debt for a new tax year is a new claim."). The split is so extensive that courts on both sides have suggested they are following the majority approach. *Compare, e.g., In re Blue Coal Corp.*, 166 B.R. 816, 821 (Bankr. M.D. Pa. 1993) ("We are compelled to agree with the majority of cases and, therefore, conclude that a tax claim for one year is as dissimilar to a tax claim for another year as it might be to a [claim for a] vehicular accident with a government vehicle.") *with In re Hanscom Retail Foods, Inc.*, 96 B.R. 33, 36 (Bankr. E.D. Pa. 1988) ("[A]n attempt by [the] IRS to add additional quarters, . . . or even additional years is usually not considered a new claim.").

"Having reviewed these cases and myriad others," *In re Sunwest Hotel Corp.*, 1998 WL 982905 at \*9, this Court agrees that "[s]eparate years imply separate tax claims" with respect to the 2016 and 2017 personal property taxes at issue. *Matter of Stavriotis*, 977 F.2d at 1206 n.4. As discussed above, in New Mexico, livestock taxes are the personal obligation of the person owning the livestock on January 1 of a given tax year. N.M. Stat. Ann. §§ 7-38-47, 7-36-21(A). Thus, even

---

For purposes of this section, however, the Court will assume without deciding that the 2016 personal property taxes were for livestock, because, even if they were, the County's claim for the 2017 Livestock Taxes would be a new one.

assuming the 2016 personal property taxes included in the County's timely Proof of Claim were for livestock, the County's right to payment of such taxes "aris[es] out of different facts" from its right to payment of the 2017 Livestock Taxes. At best, the 2016 personal property taxes arise out of livestock Debtor owned on January 1, 2016, while the 2017 Livestock Taxes arise out of livestock it owned on January 1, 2017. While the two claims at issue are not as "dissimilar" as a tax claim would be compared to a claim for "a vehicular accident with a government vehicle," *In re Blue Coal Corp.*, 166 B.R. at 821, it seems overwhelmingly likely that the livestock Debtor owned, the value of that livestock, and/or the rates at which that livestock was taxed, changed between January 1, 2016 and January 1, 2017. Thus, "[b]y adding [a] new tax year[]," the County's proposed "amended claim asserts a distinctly new right to payment, one arising out of different facts." *In re Van*, 612 B.R. 893, 901 (Bankr. N.D. Ill. 2020) (quotation marks omitted).

This conclusion is consistent with Rule 15(c), pursuant to which the County's claim for the 2017 Livestock Taxes would not relate back to the date of its timely filed Proof of Claim. As previously noted, under Rule 15(c), an amendment relates back to an original pleading when it "asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). Here, the County's claim for the 2017 Livestock Taxes arose out of Debtor's ownership of livestock on January 1, 2017, while the personal property tax claims in its original Proof of Claim, assuming they were for livestock, arose out of Debtor's ownership of livestock on January 1, 2016. Manifestly, then, the two claims did not arise out of the same conduct, transaction, or occurrence. *See also In re Sparks*, No. 99-01031-M, 2000 WL 641610, at *3 n.3 (Bankr. N.D. Okla. Jan. 27, 2000) (for taxes "levied on an annual basis," "[e]ach year is the origin of a new liability and of a separate cause of action").

16

Notably, at least some courts that have permitted post-bar date amendments of timely filed tax claims to include additional tax years have done so in circumstances quite different from those presented here. For example, in *In re Sage-Dey, Inc.*, 170 B.R. 46 (Bankr. N.D.N.Y. 1994), the court permitted an amendment to correct "an error in the amount of FICA[12] tax liability listed in [the original proof of claim] to include a prior quarter" that "f[ell] in a different year." *Id.* at 50–51. In so doing, the court noted the "continuous" nature of liability for FICA taxes, which "accumulate as they accrue," and expressly limited its decision "to amendments for FICA and FUTA[13] tax liabilities accrued prior to the time period listed in the original proof of claim." *Id.*; *see also In re DPH Holdings Corp.*, 494 F. App'x 135, 137 (2d Cir. 2012) ("While this Court has permitted a timely filed tax claim to be amended to cover periods both before and after the months included in the original claim, we have only done so in cases where the computations of the amounts due . . . depended on factors which continued constant irrespective of quarterly periods.") (quotation marks and brackets omitted). In contrast, the tax liability the County seeks to add here is *not* continuous and did *not* depend on factors which continued constant. "Indeed, [the County] implicitly acknowledges the noncontinuous nature of its assessments when it argues that . . . it was unable to calculate" the 2017 Livestock Taxes when it filed its original Proof of Claim. *In re DPH Holdings Corp.*, 494 F. App'x at 137; (*see, e.g.*, Doc. 5 at 62, 69, 73; Doc. 17 at 7.)

Also, the Court notes that "a proof of claim which purports to amend a timely filed claim should be reasonably within the amount of the timely filed claim." *In re PT-1 Commc'ns, Inc.*, 292

---

[12] "FICA" refers to the "Federal Insurance Contribution[s] Act." 170 B.R. at 47.

[13] "FUTA" refers to the "Federal Unemployment Tax Act." 170 B.R. at 48.

B.R. at 487. Here, however, the County's claim for the 2017 Livestock Taxes is about twenty-eight (28) times higher than the 2016 personal property taxes included in its timely Proof of Claim.[14] This does not strike the Court as "reasonably within the amount of the timely filed claim." *Id.*; *cf. In re Tanaka Bros. Farms, Inc.*, 36 F.3d 996, 1000 (10th Cir. 1994) (permitting amended claim "4 times the original," and distinguishing it from amended claim "220 times the amount of the original claim," which the Seventh Circuit rejected).

The County argues that its "initial claim . . . included *real property taxes* for 2017, and so the amendment would not be expanding the time period over which its claim spanned." (Doc. 15 at 26 (emphasis added).) The Court is not persuaded. Though there is no consensus that a claim for a different tax *year* is a new claim, courts do agree that a claim for a different *type* of tax is a new one. *See, e.g.*, *In re Nelson*, 2012 WL 2415553 at *4 ("[A]n attempt by a taxing authority to add a new type of tax by amendment after the bar date has passed is generally disallowed."); *In re Tel. Co. of Cent. Fla.*, 308 B.R. 579, 582 (Bankr. M.D. Fla. 2004) ("A proof of claim for unpaid taxes that effectively increases the amount sought does not bar amendment, unless the claim asserts a different tax or a different fiscal timeframe."); *In re Metro Transp. Co.*, 117 B.R. 143, 148 (Bankr. E.D. Pa. 1990) ("[W]here a claimant attempts to change the nature of a proof of claim, such as when a taxing authority attempts to increase its proof of claim by adding different types of taxes or different tax years than that stated in the original proof of claim, such amendments have

---

[14] According to the County, as of June 2020, the total amount of taxes, interest, and fees due on the 2016 personal property taxes included in its Proof of Claim is $11,274.07, while the total amount of taxes, interest, and fees due on the 2017 Livestock Taxes is $323,681.57. (Doc. 5 at 154.)

generally been disallowed."); *In re Hanscom Retail Foods, Inc.*, 96 B.R. at 35–36 ("An attempt by [the] IRS to add a new type of tax after the bar date is generally disallowed.").

In the Court's view, the real and personal property taxes at issue here are different types of taxes. Under New Mexico law, real property taxes and personal property taxes are treated in distinctly different ways. For example, real property taxes are secured by a lien on the property, but personal property taxes are not. N.M. Stat. Ann. § 7-38-48(A). Instead, a county treasurer may issue a "demand warrant" for delinquent personal property taxes, pursuant to which the personal property may be seized and sold. N.M. Stat. Ann. §§ 7-38-53 to 7-38-59. Not incidentally, this differential treatment explains why Debtor's real property taxes have been paid but its personal property taxes have not: due to the tax lien on the real property, the real property taxes were paid "through the normal title company closing process" when Mr. Marcus sold the property. (Doc. 5 at 22.) Thus, notwithstanding the inclusion of 2017 real property taxes in the County's timely Proof of Claim, its claim for the 2017 Livestock Taxes remains a new one.

In short, the Bankruptcy Court correctly concluded that the County cannot amend its timely Proof of Claim to add the 2017 Livestock Taxes because its claim for these taxes is "truly new." *In re Unioil II*, 962 F.2d at 992. As such, the Court need not reach the issue of whether the Bankruptcy Court abused its discretion in applying the equitable factors the Tenth Circuit identified in *In re Tanaka Bros. Farms, Inc.*, 36 F.3d at 998-99. *See In re CF&I Fabricators of Utah, Inc.*, 1994 WL 637340 at *6.

**C.   The Bankruptcy Court relied on clearly erroneous factual findings in refusing to allow the County to file a new claim for the 2017 Livestock Taxes out of time.**

The County next argues that, if its claim for the 2017 Livestock Taxes is a new one, the Bankruptcy Court erred in refusing to allow it to file the new claim out of time on the basis of

excusable neglect. (Doc. 15 at 30.) In considering this issue, the Court must address the County's challenge to two of the factual findings on which the Bankruptcy Court relied to support its ruling, *i.e.*, that:  (1) the County's timely Proof of Claim made no "mention of an unsecured priority claim for personal property taxes" and included no such taxes, (Doc. 5 at 204, 207-09 & n.9); and, (2) "[t]he County has never given any reason for its failure to file a claim for personal property taxes" and "has offered no justification" for failing to timely request an extension of time in which to do so, (*id.* at 209-10). (Doc. 15 at 7, 11-12, 22-23, 26-29.)

A bankruptcy court's factual findings "are reviewable only for clear error—in other words, with a serious thumb on the scale for the bankruptcy court." *U.S. Bank Nat. Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*, — U.S. —, 138 S. Ct. 960, 966 (2018); *see also In re Long*, 843 F.3d at 873 (bankruptcy court's *"*factual findings are reviewed for clear error"). "A finding of fact is clearly erroneous if it is without factual support in the record or if, after reviewing all of the evidence, [the Court is] left with the definite and firm conviction that a mistake has been made." *In re Com. Fin. Servs., Inc.*, 427 F.3d 804, 810 (10th Cir. 2005).

With respect to the first disputed factual question, *i.e.*, whether the County's Proof of Claim mentioned or included an unsecured, priority claim for personal property taxes, the Court has examined the Proof of Claim, which is part of the record. (Doc. 3 at 3-31.) Although the form "proof of claim" indicates the basis of the claim is real property and lists the entire amount as secured, it also indicates a portion of the claim consists of "[t]axes or penalties owed to governmental units" "*[e]ntitled to [p]riority*" under "11 U.S.C. § 507(a)(8)." (*Id.* at 3 (emphasis added).) Section 507(a)(8), in turn, enumerates "allowed *unsecured* claims of governmental units" entitled to priority, including claims for "a property tax incurred before the commencement of the

case and last payable without penalty after one year before the date of the filing of the petition."[15] 11 U.S.C. § 507(a)(8)(B) (emphasis added). Thus, the Proof of Claim did "mention . . . an unsecured priority claim," which was presumably "for personal property" given its unsecured nature.[16] (Doc. 5 at 208 n.9.) In addition, and significantly, Mr. Marcus has conceded here and below that the Proof of Claim in fact included $8,877.22 in personal property taxes.[17] (*See, e.g.*, Doc. 5 at 22, 24, 126; Doc. 6 at 25; Doc. 16 at 14.) Thus, the Bankruptcy Court clearly erred in finding that the Proof of Claim did not mention or include an unsecured, priority claim for personal property taxes.

The Bankruptcy Court's error with respect to the second disputed factual question, *i.e.*, whether the County gave any reasons for its failure to act in a timely manner, is equally clear. Contrary to the Bankruptcy Court's findings, the County offered several reasons and justifications below for its failure to timely file a claim for the 2017 Livestock Taxes or seek an extension of time in which to do so. Thus:

- In its initial response to Mr. Marcus' Partial Objection to Claim, the County explained that: (1) it had no record of receiving either Debtor's and Unsecured Creditors

---

[15] None of the other "allowed unsecured claims of governmental units" listed in Section 507(a)(8) would apply to any of the taxes included in the Proof of Claim. *See generally* 11 U.S.C. § 507(a)(8).

[16] As previously discussed, New Mexico law provides for tax liens on real property, but not personal property. N.M. Stat. Ann. §§ 7-38-48, 7-38-53 to 7-38-59.

[17] In his reply in support of his summary judgment motion, Mr. Marcus did contend "there is no testimony that establishes whether [the $8,877.22 owed for 2016] was for real property or personal property taxes." (Doc. 5 at 128.) This contention is simply wrong; by the time Mr. Marcus made it, a County employee had attested that the $8,877.22 left owing after Debtor's real estate was sold was "personal property tax." (*Id.* at 114.) Mr. Marcus seems to have realized his error while the case was still pending below, (*see* Doc. 6 at 25); and, in his appellate response brief he expressly concedes the sale of Debtor's real property "left a balance of $8,877.22 for personal property taxes owed to [the County]." (Doc. 16 at 14.) However, he maintains that the Proof of Claim, though it *included* these taxes, did not *mention* them. (*Id.* at 24.)

Committee's Joint Plan (BR Doc. 167) or the Confirmation Order[18]; (2) the Chapter 11

Plan addressed priority tax claims in one boilerplate paragraph; and, (3) due to staff

turnover following an election, a layperson prepared the County's Proof of Claim

without the assistance of counsel experienced in bankruptcy procedures. (Doc. 5 at 31-

33.)

- In its amended response, the County added that the Proof of Claim only included taxes,

  interest, and fees through 2016 because Debtor's 2017 personal property taxes had not

  yet accrued when the County filed the Proof of Claim; and, the County believed the

  2017 Livestock Taxes were a post-petition administrative expense for which it did not

  need to make a claim pursuant to 11 U.S.C. § 503(b)(1)(D). (*Id.* at 59-65.)

- In its Motion for Summary Judgment and Motion to Amend Proof of Claim and

  Application for Payment of Administrative Expenses, the County reiterated the

  explanations in its amended response and added that its Proof of Claim had included

  the most up-to-date information available at the time of filing. (*Id.* at 66-75, 140-52.)

In sum, the two factual findings the County challenges are wholly without support in the

record and are therefore clearly erroneous. The County's Proof of Claim indirectly references and

undisputedly includes a claim for personal property taxes; and, the record irrefutably shows that

the County gave a number of reasons below for its failure to act in a timely manner. Of course,

these errors do not necessarily require reversal, because this Court "must disregard all errors and

---

[18] The record shows that the County was served with the plan in question. (BR Doc. 171 at 1; BR Doc. 171-1 at 2.) However, neither the Bankruptcy Court nor Mr. Marcus has pointed to any evidence that the County was served with notice or a copy of the Confirmation Order, and the Court has found no such evidence in the record. (Doc. 5 at 202 n.3; Doc. 16 at 13.)

defects that do not affect any party's substantial rights," *i.e.*, all errors that are "harmless." Fed. R. Civ. P. 61; Fed. R. Bankr. P. 9005[19]; *In re Martinez*, 126 F. App'x 890, 899 (10th Cir. 2005) ("Federal Rule of Civil Procedure 61, incorporated in Federal Rule of Bankruptcy Procedure 9005, applies in determining whether an error in a bankruptcy proceeding is harmless."); *see also Matter of Colo. Corp.*, 531 F.2d 463, 469 (10th Cir. 1976) (applying "harmless error rule" in bankruptcy appeal). However, as the following discussion shows, the erroneous findings at issue here are not harmless.

Federal Rule of Bankruptcy Procedure 9006 provides that, generally, a court may in its discretion allow an untimely act to be done if the failure to timely act "was the result of excusable neglect." Fed. R. Bankr. P. 9006(b)(1). "The 'excusable neglect' standard of [Bankruptcy] Rule 9006(b)(1) governs late filings of proofs of claim in Chapter 11 cases[.]" *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 389 (1993).[20] As the Supreme Court has observed,

> by empowering the courts to accept late filings 'where the failure to act was the result of excusable neglect,' Rule 9006(b)(1), Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control.

*Id.* at 388.

---

[19] Though Bankruptcy Rule 9005 incorporates Rule 61 in cases under the Bankruptcy Code, it adds that, "[w]hen appropriate," courts "may order the correction of any error or defect or the cure of any omission which does not affect substantial rights." Fed. R. Bankr. P. 9005. The Court need not decide whether it would be appropriate to order the correction of a harmless error here, however, because the erroneous findings at issue were not harmless.

[20] It does not, however, govern late proofs of claim in proceedings under Chapter 7, Chapter 12, or Chapter 13. *Pioneer Inv. Servs. Co.*, 507 U.S. at 389; *In re Wooten*, 620 B.R. 351, 355 n.3 (Bankr. D.N.M. 2020).

The determination of "what sorts of neglect will be considered 'excusable'. . . is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.* at 395. According to the *Pioneer* Court, these circumstances include

> the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Id.* "[T]he four *Pioneer* factors do not carry equal weight; the excuse given for the late filing must have the greatest import." *United States v. Torres*, 372 F.3d 1159, 1163 (10th Cir. 2004) (quoting *Graphic Comm'c'ns Int'l Union v. Quebecor Printing Providence, Inc.*, 270 F.3d 1, 5 (1st Cir. 2001)); *see also City of Chanute, Kan. v. Williams Nat. Gas Co.*, 31 F.3d 1041, 1046 (10th Cir.1994) ("[F]ault in the delay remains a very important factor—perhaps the most important single factor—in determining whether neglect is excusable[.]").

In light of these standards, the factual errors discussed above cannot be deemed harmless. The Bankruptcy Court expressly relied on its erroneous finding that "the County *has never given any reason* for its failure to file a claim for personal property taxes" in deeming the failure inexcusable. (Doc. 5 at 209 (emphasis added).) As such, it plainly and wholly failed to consider any of the explanations the County proffered in its analysis of this issue. Given that the County's explanations were at least facially plausible and were "perhaps the most important single factor" in the analysis, *City of Chanute*, 31 F.3d at 1046, the Bankruptcy Court's denial of their very existence cannot be characterized as harmless.

Moreover, the Bankruptcy Court's erroneous finding regarding the contents of the County's Proof of Claim also played a role in its *Pioneer* analysis. 507 U.S. at 395. Specifically, in considering the *Pioneer* factor of "danger of prejudice to the nonmoving parties," the

Bankruptcy Court found the County's claim for 2016 personal property taxes to be "new" even though these taxes were in fact included in its original Proof of Claim.[21] (Doc. 5 at 209.) The inclusion of a second factual error in the Bankruptcy Court's *Pioneer* analysis makes it even more likely the County's substantial rights were affected. Taken together, the Bankruptcy Court's two erroneous factual findings prevented the court from properly exercising its discretion in weighing the *Pioneer* factors.[22]

Additionally, the erroneous finding that the Proof of Claim included no personal property taxes prevented the Bankruptcy Court from resolving a pertinent factual dispute. Some record evidence supports the County's position that the 2016 personal property taxes included in the Proof of Claim were for livestock,[23] while other evidence supports Mr. Marcus' position that these taxes may have been for mobile homes. (Doc. 6 at 25, 36; *compare, e.g.*, Doc. 3 at 26-27 (tax bill attached to Proof of Claim for "Parcel 3024115360180" referring to "Non-residential Improvement" and

---

[21] More particularly, the Bankruptcy Court referred to "a new $334,955.64 priority claim," lumping together the 2016 personal property taxes included in the Proof of Claim and the 2017 Livestock Taxes omitted from it. (Doc. 5 at 209.) As of June 2020, the 2016 personal property taxes, with interest and fees, amounted to $11,274.07, while the 2017 Livestock Taxes, with interest and fees, amounted to $323,681.57. (*Id.* at 154.) The sum of $11,274.07 and $323,681.57 is $334,955.64.

[22] The Court is also concerned that, in weighing the *Pioneer* factor of potential prejudice to nonmoving parties, the Bankruptcy Court may have discounted the undisputed fact that a County employee notified Mr. Marcus of unpaid personal property taxes far in excess of $8,877.22 *before* Mr. Marcus reached a settlement with MetLife. (Doc. 5 at 23, 114.) Though this fact is mentioned in the Opinion's "Facts" section, (*id.* at 203), the Bankruptcy Court did not address its impact on the prejudice question. (*See id.* at 209 (finding that Mr. Marcus "negotiated his settlement with MetLife based on claims filed"); *see also id.* at 210 (finding that Mr. Marcus "would have negotiated a different deal with MetLife" if the County had timely filed a claim for 2016 and 2017 personal property taxes).) Standing alone, this omission would not rise to the level of an abuse of discretion; however, viewed in conjunction with the clearly erroneous factual errors discussed in this section, it also suggests the County's substantial rights were affected.

[23] Although Mr. Marcus contends "[t]here was no argument raised before the Bankruptcy Court that livestock . . . was included in the [Proof of Claim]," (Doc. 16 at 24), he is mistaken on this point. At an August 6, 2020 hearing before the Bankruptcy Court, the County's counsel argued that "not all" of the original Proof of Claim was for real property, and "the portion of the amount that has . . . yet to be paid" is "the $8,000-and-change that's associated with the livestock." (Doc. 6 at 36.)

"Agricultural Land") *with* Doc. 5 at 35-36, 39-40 (tax bills attached to County's response to Mr. Marcus' claim objection for "Parcel 3024115360180" referring to "Cattle," "Dairy," and "Equine"); *compare also* Doc. 15 at 16 (asserting that 2016 personal property taxes included in Proof of Claim were on "cattle . . . represented as Parcel No. 3024115360180") *with* Doc. 16 at 14 ("The record has not elucidated the basis for the [2016] personal property taxes; however, it is possibly based on the two mobile homes that were located on the real property.").)

The Bankruptcy Court's error in finding that the Proof of Claim included no personal property taxes at all precluded it from determining whether the 2016 personal property taxes in the Proof of Claim were for livestock. This, in turn, precluded the Bankruptcy Court from accurately assessing the degree of similarity between the 2016 personal property taxes and the 2017 Livestock Taxes and thus whether the former provided Mr. Marcus and unsecured creditors with some degree of timely notice that the County would later try to collect the latter. The Bankruptcy Court should have resolved these issues before weighing the *Pioneer* prejudice factor. (Doc. 5 at 209-10.)

As a reviewing court, this Court may not "decide factual issues not addressed by the bankruptcy court," particularly where the record contains disputed evidence on the issues. *In re Robinson*, 987 F.2d 665, 669 (10th Cir. 1993). Also, it would be more appropriate for the Bankruptcy Court in the first instance to weigh the record evidence it erroneously disregarded in exercising its discretion under *Pioneer*, 507 U.S. at 380. The Court therefore recommends that this matter be reversed in part and remanded. On remand, in deciding whether to allow the County to file a claim for the 2017 Livestock Taxes out of time, the Bankruptcy Court should:  (1) address the parties' factual dispute regarding whether the 2016 personal property taxes included in the

Proof of Claim were for livestock; and, (2) assess the County's proffered reasons for failing to timely file a claim for the 2017 Livestock Taxes or seek an extension of time in which to do so.

**D.      The Bankruptcy Court erred in rejecting the County's administrative claim for the 2018 Livestock Taxes as untimely.**

Finally, the County argues that the Bankruptcy Court erred in rejecting its administrative claim for the 2018 Livestock Taxes as untimely.[24] (Doc. 15 at 6-7, 31-35.) In support of this argument, the County first contends that, according to the terms of the Chapter 11 Plan, the Administrative Claims Bar Date did not apply to its post-petition tax claim. (*Id.* at 6; Doc. 17 at 16-19.) Alternatively, the County suggests that applying the Administrative Claims Bar Date to bar its post-petition claim violates 11 U.S.C. § 503(b)(1)(D).[25] (*Id.* at 6-7, 31-35; Doc. 17 at 15-16, 18-19.) The Court need not decide whether the Bankruptcy Court correctly determined that, by the Chapter 11 Plan's terms, the Administrative Claims Bar Date applies to the County's post-petition tax claim. As explained below, even assuming the Bankruptcy Court correctly concluded that it does, the court erred in rejecting the claim as untimely. The Court reviews this legal question *de novo*. *In re Long*, 843 F.3d at 873.

---

[24] The Bankruptcy Court found, and Mr. Marcus does not dispute, that the County's claim for the 2018 Livestock Taxes is a post-petition claim for an administrative expense under 11 U.S.C. §§ 503(b)(1)(B)(i) and 507(a)(2). (Doc. 5 at 210-12; Doc. 16 at 25-37.)

[25] The County also argues that applying the Administrative Claims Bar Date to bar its claim for the 2018 Livestock Taxes would conflict with 28 U.S.C. § 960(a), which provides that "[a]ny officers and agents conducting any business under authority of a United States court shall be subject to all Federal, State and local taxes applicable to such business to the same extent as if it were conducted by an individual or corporation." (Doc. 15 at 6, 32; Doc. 17 at 19-20.) Mr. Marcus disagrees. (Doc. 16 at 36.) The Court need not resolve this issue because it is undisputed that application of the bar date to the County's post-petition claim conflicts with Section 503(b)(1)(D). (Doc. 5 at 211; Doc. 16 at 35.)

As a preliminary matter, the Court must identify the procedural mechanism by which the County seeks relief from the Administrative Claims Bar Date.[26] The County has not expressly stated here or below whether it seeks relief from the bar date pursuant to Federal Rule of Civil Procedure 60(b)(4), which "authorizes the court to relieve a party from a final judgment if the judgment is void." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270 (2010) (quotation marks omitted); *see* Fed. R. Bankr. P. 9024 (providing that Rule 60 generally applies in cases under the Bankruptcy Code). However, it has identified no other basis on which the confirmed plan could be modified, and the only other arguably applicable provision in Rule 60 appears to be time-barred. *See* Fed. R. Civ. P. 60(b)(1) (court may relieve party from final order based on "mistake, inadvertence, surprise, or excusable neglect"); Fed. R. Civ. P. 60(c)(1) (motion under Rule 60(b)(1) must be made no more than a year after order is entered). Moreover, in light of their reliance on *Espinosa*, 559 U.S. at 260, both the Bankruptcy Court and Mr. Marcus appear to have assumed the County sought modification of the confirmed plan pursuant to Rule 60(b)(4). (*See, e.g.*, Doc. 5 at 95-97, 134, 160, 168-69, 211.) The Court will therefore address the County's request for relief from the Administrative Claims Bar Date pursuant to Rule 60(b)(4).

The County relies on 11 U.S.C. § 503(b)(1)(D) to support its argument that the Bankruptcy Court erred in applying the Administrative Claims Bar Date to bar its claim for the 2018 Livestock Taxes. (Doc. 15 at 31-35.) Section 503(b)(1)(D) provides that "a governmental unit shall not be required to file a request for the payment of an expense . . . as a condition of its being an allowed

---

[26] The County made alternative arguments below regarding whether the relief it seeks would require modification of the Chapter 11 Plan. (*Compare, e.g.*, Doc. 5 at 146-48, 173 (arguing that allowing claim for 2018 Livestock Taxes did not require modification of the Chapter 11 Plan) *with id.* at 174 (arguing that Bankruptcy Court should "enter an order modifying the [Chapter 11] Plan so as to make the Trustee's obligation to pay the property taxes demanded . . . more explicit").)

administrative expense." 11 U.S.C. § 503(b)(1)(D). The Bankruptcy Court expressly found, and Mr. Marcus does not dispute, that applying the Administrative Claims Bar Date to bar the County's post-petition tax claim conflicts with Section 503(b)(1)(D).[27] (Doc. 5 at 211; Doc. 16 at 35.) Nevertheless, the Bankruptcy Court concluded that the bar date overrides Section 503(b)(1)(D) because the Supreme Court has "held that a properly noticed and confirmed plan is binding on the noticed parties even if the plan contains provisions contrary to the Bankruptcy Code." (Doc. 5 at 211 (citing *Espinosa*, 559 U.S. at 276)); *see also In re Laing*, 31 F.3d 1050, 1051-52 (10th Cir. 1994) (confirmed Chapter 11 plan was binding as final judgment on the merits "regardless of whether [a] provision [was] inconsistent with the bankruptcy laws") (quotation marks and brackets omitted).

In the unique circumstances presented here, the Court disagrees that the Administrative Claims Bar Date overrides Section 503(b)(1)(D) pursuant to *Espinosa*. In *Espinosa*, the bankruptcy court confirmed a plan that discharged interest on a student loan. 559 U.S. at 264. Contrary to the Bankruptcy Code, the bankruptcy court did so without first conducting an adversary proceeding to determine whether failure to discharge such interest "would impose an 'undue hardship' on the debtor and his dependents." *Id.* at 263-64. The student loan creditor "received notice of, but did not object to, the plan, and failed to file an appeal after the Bankruptcy Court subsequently confirmed the plan." *Id.* at 264. Years later, the creditor sought relief from the confirmed plan under Rule 60(b)(4). *Id.*

---

[27] In light of the Bankruptcy Court's express finding and Mr. Marcus' concession, the Court need not address whether the "notice" of claim the Administrative Claims Bar Date requires is a "request for . . . payment" prohibited by Section 503(b)(1)(D). (Doc. 4 at 32); *but cf. Collins v. Tenn. Dep't of Revenue*, 555 B.R. 670, 675 & n.2 (W.D. Tenn. 2016) (holding that bar date for "application for allowance" of claim did not override Section 503(b)(1)(D) and noting "auxiliary issue" of "whether a governmental unit may be required to file even a proof of claim for its post-petition tax claims to be paid as administrative expenses, pursuant to 11 U.S.C. § 503(b)(1)(D)").

The *Espinosa* Court explained that "[a] judgment is not void . . . simply because it is or may have been erroneous," and "a motion under Rule 60(b)(4) is not a substitute for a timely appeal." 559 U.S. at 270 (quotation marks omitted). Rather, "Rule 60(b)(4) applies only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard." *Id.* at 271. On the record before it, the Supreme Court concluded that though the bankruptcy court erred in confirming the plan, its error did not render the plan void because the error was not jurisdictional and the creditor was afforded due process. *Id.* at 273-74. Thus, the Court found the creditor was not entitled to relief under Rule 60(b)(4). *Id.* at 276; *see also In re Moretti*, 100 F.3d 967, at *2-*3 (10th Cir. 1996) (unpublished) (finding that confirmed plan was res judicata as to creditor whose due process arguments were without merit); *cf. In re Monahan*, 497 B.R. 642, 651 (B.A.P. 1st Cir. 2013) ("*Espinosa* stands for the limited proposition that a confirmed plan is binding on all parties-in-interest, *provided the plan proponent afforded such parties adequate notice*, consistent with the Due Process Clause of the United States Constitution—even if the plan violates the Bankruptcy Code in some particulars.") (emphasis in original) (quotation marks omitted).

Contrary to the Bankruptcy Court's decision, *Espinosa* and its progeny actually support the County's request for relief from the Administrative Claims Bar Date. The *Espinosa* Court expressly limited its holding to orders confirming the discharge of student loan debt in Chapter 13 proceedings. *Id.* at 273 n.10. Specifically, in Footnote 10, the Court observed that

> student loan debt *is* dischargeable in a Chapter 13 proceeding if a court makes a finding of undue hardship. In contrast, other provisions in Chapter 13 provide that certain other debts are *not* dischargeable under *any* circumstances. We express no view on the conditions under which an order confirming the discharge of one of these types of debt could be set aside as void.

30

*Id.* (emphases in original) (citations omitted).[28] In so stating, the *Espinosa* Court implicitly recognized that jurisdictional and/or due process concerns may render a confirmed plan void when the plan violates a Bankruptcy Code provision that is absolute, versus one that is conditional.

Based on the due process concerns Footnote 10 tacitly acknowledged, lower courts have refused to enforce boilerplate terms of a confirmed plan or discharge order that violate an absolute provision of the Bankruptcy Code.[29] *See McClure v. Franchise Tax Bd.*, No. 18-CV-05241-VC, 2019 WL 11706173, at *1 (N.D. Cal. July 1, 2019) (creditor had insufficient "notice that its rights were in jeopardy for the plan to have preclusive effect" where debt was nondischargeable and plan contained "only boilerplate language" purporting to discharge it); *In re Moore*, No. 08-40118-JTL, 2013 WL 4017936, at *11 (Bankr. M.D. Ga. Aug. 6, 2013) (discharge order "would almost certainly be void" where "boilerplate plan language" in confirmed plan "could not possibly have given sufficient notice to the IRS that . . . the nondischargeable tax debt would be discharged"). Likewise, here, the broad and general language of the Administrative Claims Bar Date—which never expressly states that it applies to governmental entities' post-petition tax claims—seems inadequate to give sufficient notice to the County that it overrides the unqualified mandate of Section 503(b)(1)(D).

Indeed, not only does the Chapter 11 Plan fail to directly address whether the Administrative Claims Bar Date applies to post-petition tax claims, but also other plan provisions could reasonably be read to indicate it does not. For example, the plan provides that Mr. Marcus'

---

[28] According to Mr. Marcus, "[t]here is nothing in the controlling language of *Espinosa* that limits its applicability." (Doc. 16 at 35.) However, he completely fails to explain why Footnote 10—the whole purpose and effect of which is to limit *Espinosa*'s applicability—should be disregarded as insufficiently "controlling." (*See generally id.*)

[29] In *Espinosa*, the confirmed plan provision discharging the student loan debt at issue was specific. 559 U.S. at 264.

"rights, responsibilities and duties" include "preparing tax returns and processing payment of taxes owed by the Debtor or the Liquidating Trustee." (Doc. 4 at 37.) It also grants to Mr. Marcus "all powers and duties as set forth in the Liquidating Trust Agreement," which in turn directs Mr. Marcus to "file on behalf of the Liquidating Trust, at the time and in the manner prescribed by the Internal Revenue Code and applicable state and local law, such tax returns and reports as may be required" and to "pay . . . any and all taxes imposed on the Liquidating Trust." (*Id.* at 39, 50, 58, 61; *see also id.* at 62 ("The Liquidating Trustee shall be responsible for payments . . . of any taxes imposed on the Liquidating Trust or its assets.").) None of these provisions condition payment of post-petition taxes on compliance with the Administrative Claims Bar Date. (*See generally id.*) As the County observes, these provisions further erode any notice the plan otherwise might have given the County that the Administrative Claims Bar Date would apply to it despite Section 503(b)(1)(D).[30] (Doc. 17 at 18-19.)

Moreover, the Court's concerns regarding adequate notice are significantly heightened in this case because the record does not show the County was ever served with notice or a copy of the Bankruptcy Court's June 2018 Confirmation Order. (Doc. 5 at 202 n.3; Doc. 15 at 16-18, 21; Doc. 16 at 13.) In fact, on the present record, it appears the County not only was not served with notice or a copy of the Confirmation Order, but also lacked actual knowledge of it until Mr. Marcus' Partial Objection to Claim alerted the County to its existence in November 2019. (Doc. 5 at 21-28; Doc. 15 at 16-17.) By November 2019, of course, both the Administrative Claims Bar

---

[30] For the first time in its reply brief, the County argues that these provisions render the plan ambiguous and the Court should therefore construe the plan to conform with the Bankruptcy Code and against the drafter. (Doc. 17 at 16-19.) The Court declines to consider this argument because it was raised for the first time in a reply. *Gutierrez v. Cobos*, 841 F.3d 895, 902 (10th Cir. 2016).

Date and the deadline to appeal had long since expired. (Doc. 4 at 87, 91); 28 U.S.C. § 158(c);

Fed. R. Bankr. P. 8002.

As the Tenth Circuit has observed,

[a] fundamental right guaranteed by the Constitution is the opportunity to be heard when a property interest is at stake. Specifically, the [bankruptcy] reorganization process depends upon all creditors and interested parties being properly notified of *all vital steps in the proceeding* so they may have the opportunity to protect their interests.

*Reliable Elec. Co. v. Olson Const. Co.*, 726 F.2d 620, 623 (10th Cir. 1984) (emphasis added); *see also In re Unioil*, 948 F.2d 678, 683–84 (10th Cir. 1991) ("*In re Unioil I*") (though creditor had actual knowledge of bankruptcy proceedings, its claims could not be discharged where "it did not receive any formal notice of the deadline for filing proofs of claim, the time for filing objections to the reorganization plan, or the confirmation hearing").

Federal Rule of Bankruptcy Procedure 2002 provides that "the clerk, or some other person as the court may direct, shall give . . . all creditors . . . notice by mail of . . . entry of an order confirming a [Chapter 11] plan[.]"[31] Fed. R. Bankr. P. 2002(f)(7). There is no indication in the record that the County was given the notice Rule 2002 requires. Further, the Confirmation Order was certainly a "vital step[] in the proceeding," of which the County needed to be notified to provide it with "the opportunity to protect [its] interests." *Reliable Elec. Co.*, 726 F.2d at 623; *see also In re Arch Wireless*, 332 B.R. 241, 251 (Bankr. D. Mass. 2005), *subsequently aff'd sub nom. In re Arch Wireless, Inc.*, 534 F.3d 76 (1st Cir. 2008) ("[I]f a creditor is not given adequate notice of . . . the order confirming a plan in a Chapter 11 case, the creditor may not be bound by the plan

---

[31] The Court notes that "the rule that governs notice and dischargeability in Chapter 11 does not apply in Chapter 7." *In re Green*, 876 F.2d 854, 856–57 (10th Cir. 1989).

provisions and its claim is not discharged."). Without knowing if or when the Bankruptcy Court had confirmed the Chapter 11 Plan, the County could not even determine what the Administrative Claims Bar Date actually was, much less if or when it needed to file an appeal seeking relief from that bar date.[32] For all of these reasons, applying the Administrative Claims Bar Date to bar the County's administrative claim for the 2018 Livestock Taxes would violate due process and to that extent the bar date is void under Rule 60(b)(4).

The Court is aware that the United States District and Bankruptcy Courts for the Southern District of New York have held the administrative claims bar date in a confirmed plan or bankruptcy court order overrides Section 503(b)(1)(D). *See In re N. New England Tel. Operations, LLC*, No. 09-16365-CGM, 2014 WL 3952925, at *10 (S.D.N.Y. Aug. 12, 2014), *aff'd sub nom. In re N. New England Tel. Operations LLC*, 795 F.3d 343 (2d Cir. 2015) ("[T]he 503(b)(1)(D) exception does not apply where the court has entered an administrative bar date order applicable to governmental units."); *In re BH S & B Holdings LLC*, 435 B.R. 153, 164–65 (Bankr. S.D.N.Y. 2010) (same); (*see* Doc. 5 at 97, 133.) However, in neither of these decisions did the court give any reasoned explanation for its holding. The *Northern New England Telephone Operations* decision merely cited to the *BH S & B Holdings* decision, 2014 WL 3952925 at *10; and, the *BH S & B Holdings* decision cited to two decisions, neither of which addressed or even mentioned Section 503(b)(1)(D). 435 B.R.at 164 (citing *In re PT-1 Commc'ns, Inc.*, 403 B.R. 250, 261 (Bankr. E.D.N.Y. 2009), *aff'd in part, vacated in part sub nom. United States v. Bond*, 486 B.R. 9

---

[32] As previously discussed, the Confirmation Order shortened the Administrative Claims Bar Date from 90 calendar days plus 3 business days after entry of the Confirmation Order to 15 days after such entry. (Doc. 4 at 10, 15, 32, 87, 91.) The Bankruptcy Court noted that the County did not assert its administrative claim until after both of these deadlines had expired. (Doc. 5 at 202 n.3.) However, it failed to acknowledge that the County could not have known what either deadline actually was because both were tied to and contingent on entry of the Confirmation Order, of which it received no notice.

(E.D.N.Y. 2012), *decision clarified*, No. 11 CIV. 5608 BMC, 2013 WL 5901951 (E.D.N.Y. Oct. 31, 2013), and *rev'd and remanded*, 762 F.3d 255 (2d Cir. 2014) and *In re Baltimore Marine Indus., Inc.*, 344 B.R. 407, 410-11 (Bankr. D. Md. 2006)). Moreover, none of these decisions discussed the due process implications of Section 503(b)(1)(D)'s unqualified language in light of *Espinosa*'s Footnote 10. Thus, the Court declines to follow them.

The Court is likewise aware of the decision of the United States District Court for the Southern District of New York in *In re U.S. Energy Systems, Inc.*, No. 12 CIV. 7107, 2013 WL 5204010 (S.D.N.Y. Sept. 16, 2013). In that case, a state taxing agency argued that an administrative claims bar date order was void as applied to it because the order was contrary to 28 U.S.C. § 960 and 11 U.S.C. § 503(b)(1)(D). *Id.* at *4. The agency also argued that it was denied due process because it did not receive a copy of the debtors' motion for entry of the bar date. *Id.*

The *U.S. Energy Systems* court held that "no due process violation occurred" because the taxing agency received notice of the bar date order the day after it was filed and 36 days before the bar date expired. *Id.* Citing *Espinosa*, the court reasoned,

> if a party receives notice of a bankruptcy court's judgment before the time for appeal expires, that party has been afforded a full and fair opportunity to litigate, and the party's failure to avail itself of that opportunity will not justify Rule 60(b)(4) relief. Here, [the taxing agency] received notice of the [b]ar [d]ate [o]rder the day after it was entered and thus was afforded ample time within which to appeal, and yet it not only failed to appeal prior to the actual Bar Date, but also waited until more than fifteen months had passed after the entry of the [b]ar [d]ate [o]rder to do so.

*Id.* (quotation marks and citation omitted).

The *U.S. Energy Systems* decision is inapposite, not only because it failed to discuss the due process implications of Section 503(b)(1)(D)'s unqualified language, but also because it is plainly distinguishable on its facts. In that case, the taxing agency received notice of the bar date

order the day after it was entered, giving the agency "ample time within which to appeal." *Id.* Here, in contrast, neither the Bankruptcy Court nor Mr. Marcus has pointed to anything in the record to show the County was served with notice or a copy of the Confirmation Order; and, the County has no record of receiving the order until long after the Administrative Claims Bar Date and the time to appeal had expired. (Doc. 4 at 87, 91; Doc. 5 at 21-28; Doc. 15 at 16-18, 21); 28 U.S.C. § 158(c); Fed. R. Bankr. P. 8002.

In sum, none of the foregoing caselaw changes the Court's assessment that applying the Administrative Claims Bar Date to bar the County's post-petition tax claim would violate due process, and to that extent the bar date is void under Rule 60(b)(4). The Court therefore recommends that the Bankruptcy Court's enforcement of the bar date against the County be reversed. The Court further recommends that this matter be remanded so the Bankruptcy Court may consider whether there is any basis other than the Administrative Claims Bar Date on which to reject the County's administrative claim for the 2018 Livestock Taxes in whole or in part. If not, the claim should be allowed.

## IV.   CONCLUSION

The Bankruptcy Court correctly concluded that the 2017 Livestock Taxes were incurred pre-petition, and that the County's claim for these taxes is a truly new claim that it cannot assert by amending its timely Proof of Claim. However, the Bankruptcy Court relied on two clearly erroneous factual findings in refusing to allow the County to file a new claim for the 2017 Livestock Taxes out of time on the basis of excusable neglect. In addition, the Bankruptcy Court erroneously rejected the County's administrative claim for the 2018 Livestock Taxes as untimely. The Court therefore RECOMMENDS that the Bankruptcy Court's Opinion and Order be affirmed

36

in part and reversed in part and that this matter be remanded for further consideration as described herein.

_____
KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**