# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

In re:

LAS UVAS VALLEY DAIRIES,                    Bankruptcy Case No. 17-12356-t11

     Debtor.

---

DOÑA ANA COUNTY TREASURER,

        Appellant,

vs.                                         No. CIV 20-1014 JB/KK

ROBERT MARCUS, Successor Liquidating
Trustee of Las Uvas Valley Dairies Liquidating
Trust,

       Appellee.

## MEMORANDUM OPINION AND ORDER ADOPTING MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

    **THIS MATTER** comes before the Court on: (i) Appellant Doña Ana County Treasurer's[1]

Notice of Appeal of Order Denying Motion to Amend Proof of Claim and Application for Payment

of Administrative Expenses & Opinion Thereon, filed October 5, 2020 (Doc. 1-1)("Notice of

Appeal"), appealing from the United States Bankruptcy Court for the District of New Mexico's

Order Denying Motion to Amend Proof of Claim and Application for Payment of Administrative

Expenses, and supporting Opinion at 201-13, 216, filed September 18, 2020 (Doc. 5)("Opinion

---

[1]The Doña Ana Treasurer is acting for Doña Ana County's benefit in this matter.  See N.M. Stat. Ann. § 4-46-1 ("[C]ounty officers, when authorized by law" may "su[e] in their name of office for the benefit of the county"). Thus, and for consistency with Magistrate Judge Khalsa's Proposed Findings and Recommended Disposition, (Doc. 18), the Court refers to Appellant and the County as "the County."

and Order"); (ii) Magistrate Judge Khalsa's Proposed Findings and Recommended Disposition,

filed August 27, 2021 (Doc. 18)("PFRD"); and (iii) the Objection of Appellee Robert Marcus, Not

Individually, but Solely in his Capacity as Successor Liquidating Trustee of the Las Uvas Dairies

Liquidating Trust to Proposed Findings and Recommended Disposition, filed September 10, 2021

(Doc. 19)("Objection"). The Court, having considered the parties' submissions, the PFRD, the

record, and the relevant law, will overrule Mr. Marcus' Objection, adopt the PFRD, affirm in part

and reverse in part the Bankruptcy Court's Order, and remand this matter to the Bankruptcy Court

for further consideration as described below.

## FACTUAL AND PROCEDURAL HISTORY[2]

Las Uvas Valley Dairies ("Valley Dairies") operated a dairy in Doña Ana County, New

Mexico, and owned real property and livestock subject to Doña Ana County's taxation.

Bankruptcy Record, Vol. 1 at 4-31, filed December 1, 2020 (Doc. 3); Bankruptcy Record, Vol. 3

at 22, 35-36, 39-40, 140, 201-03 filed December 1, 2020 (Doc. 5).  On September 15, 2017, Valley

Dairies filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C.

§§ 1101-1195, listing the County as one of its creditors.  See Las Uvas Valley Dairies' Voluntary

---

[2]The facts in this section are based on the Court's de novo review of the record.  See Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1). The Bankruptcy Court's factual findings on which the Court relies are undisputed. See, e.g., In re Anderson, No. 08-20339 EEB, 2010 WL 3843608, at *1 (D. Colo. Sept. 27, 2010)(Blackburn, J.)("[b]orrowing liberally from the bankruptcy court's . . . findings of fact" where the parties "d[id] not challenge" them). Also, the Court "take[s] judicial notice of [certain] court records in the underlying proceedings" not included in the record on appeal.  Gee v. Pacheco, 627 F.3d 1178, 1191 (10th Cir. 2010).  See, e.g., In re McDaniel, 973 F.3d 1083, 1087 n.3 (10th Cir. 2020)(taking judicial notice of bankruptcy court records on appeal); In re Schupbach, 607 F. App'x 831, 838 (10th Cir. 2015)(holding that bankruptcy appellate panel did not err in taking judicial notice of document on bankruptcy court docket on appeal).

Petition for Non-Individuals Filing for Bankruptcy at 1, 7, filed September 15, 2017 (BR[3] Doc. 1)("Petition");   Bankruptcy Record Vol. 2 at 1, filed December 1, 2020 (Doc. 4); Bankruptcy Record Vol. 3 at 201-02, filed December 1, 2020 (Doc. 5).

On October 18, 2017, Doña Ana County filed a proof of claim alleging Valley Dairies owed it $234,816.03.   See Bankruptcy Record Vol. 1 at 3-31, filed December 1, 2020 (Doc. 3)("Proof of Claim, BR Vol. 1").   The first page, a completed form, indicates the basis for the claim was "[r]eal [p]roperty" and lists the entire amount as "[s]ecured[.]"[4]   Proof of Claim, BR Vol. 1 at 3.  The form does not list "personal property" or "livestock" as a basis for the claim.  See Proof of Claim, BR Vol. 1 at 3.  However, it indicates a portion of the claim consists of "[t]axes or penalties owed to governmental units" "[e]ntitled to [p]riority" under "11 U.S.C. § 507(a)(8)."[5] See Proof of Claim, BR Vol. 1 at 3.  The remainder of the Proof of Claim consisted of tax bills addressed to Valley Dairies.  See Proof of Claim, BR Vol. 1 at 5-31.  The bills list taxes, interest, and fees owed for 2016 and for 2017, and indicate that the taxed property consists of "Agricultural Land[,]" "Residential Mobile Home Improvement[,]" "Non-Residential Land[,]" "Residential

---

[3]Citations to "BR" refer to documents filed on the U.S. Bankruptcy Court docket in the underlying bankruptcy case, Case No. 17-12356-t11.

[4]Specifically, Dona Ana County typed "$234,816.03" in the space following "Amount of Secured Claims," and left the space following "Amount Unsecured" blank.  See Proof of Claim at 3.  However, the County did not, as Mr. Marcus alleges in his Objection, "list[] the priority amount as $0.00."  Objection of Appellee Robert Marcus, Not Individually, But Solely in His Capacity As Successor Liquidating Trustee of the Law Uvas Dairies Liquidating Trust to Proposed Findings and Recommended Disposition at 10-11, filed September 10, 2021 (Doc. 19); see Proof of Claim at 3.

[5]Section 507(a)(8) enumerates "allowed unsecured claims of governmental units" entitled to priority, including those for "a property tax incurred before the commencement of the case and last payable without penalty after one year before the date of the filing of the petition."  11 U.S.C. § 507(a)(8)(B).

Improvement[,]" "Non-Residential Improvement[,]" and "Residential Land[.]"   <u>See</u> Proof of Claim, BR Vol. 1 at 5-31.

Pursuant to the Bankruptcy Court's Order Fixing Time for Filing (a) Proofs of Claim, (b) Proofs of Interest, and (c) Applications for Allowance of Administrative Expenses Under 11 U.S.C. § 503(b)(9), filed November 15, 2017 (BR Doc. 102)("Bankruptcy Order"), Valley Dairies issued a notice that set a deadline for governmental entities to file proofs of claim, to which it referred as the "Bar Date for Governmental Units," Notice of Deadline for Filing Proofs of Claim and Interests, and for Filing Applications for Allowance of Administrative Expenses Pursuant to 11 U.S.C. § 503(b)(9) at 1, filed November 17, 2017 (BR Doc. 103)("Notice").   Specifically, Valley Dairies' Notice indicates that, for governmental entities, "the last day for filing proofs of claim is the later of [(]i) the General Claims Bar Date [of January 3, 2018]; or (ii) 180 days after the date of the order of relief."  Notice at 1.  A voluntary petition "constitutes an order for relief." 11 U.S.C. § 301(b).  Notice at 1.  Thus, Valley Dairies' Notice sets the Bar Date for Governmental Units as the later of January 3, 2018, or 180 days after Debtor filed its voluntary petition, <u>i.e.</u>, March 14, 2018.  According to the Notice, the consequences of failing to file timely a proof of claim includes that, "with very limited exceptions . . . your claim . . . will be barred, and you will not . . . receive any distribution under any plan or plans of reorganization filed in this chapter 11 case," and "you shall be bound by the terms of any such plan or plans of reorganization, if confirmed by the Court." Notice at 2.  Doña Ana County was served with Valley Dairies' Notice on November 17, 2017.  Notice at 3; Mailing Matrix at 2, filed November 17, 2017 (BR Doc. 103-2).

Although Valley Dairies filed its petition under Chapter 11, it ultimately was unable to reorganize.  Bankruptcy Record Vol. 3 at 202.  Thus, on May 9, 2018, the Unsecured Creditors

Committee and Valley Dairies' two largest secured creditors proposed that a liquidating trustee

sell all of Valley Dairies' assets pursuant to their First Amended Chapter 11 Plan of Liquidation.

See Bankruptcy Record Vol. 2 at 9-67 ("Chapter 11 Plan, BR Vol. 2"); Bankruptcy Record Vol. 3

at 202.  The Chapter 11 Plan provides that the net proceeds from the sale of Valley Dairies' assets

will go to creditors according to the Bankruptcy Code's priorities, with unsecured creditors

receiving at least $1 million "to be shared pro rata[.]"  Chapter 11 Plan, BR Vol. 2 at 9.  The Plan

incorporates the March 14, 2018, Bar Date for Governmental Units.  See Chapter 11 Plan, BR Vol.

2 at 12.  In addition, it proposes a deadline for filing notices of most "[a]dministrative [c]laim[s],"[6]

to which it refers as the Administrative Claims Bar Date.  Chapter 11 Plan, BR Vol. 2 at 10, 15,

32.  The Plan proposes that this deadline should be set for three business days plus ninety calendar

days after the Bankruptcy Court confirms the Chapter 11 Plan.  See Chapter 11 Plan, BR Vol. 2 at

10, 15, 32.

On May 9, 2018, the Bankruptcy Court set a deadline of June 6, 2018 to object to the

Chapter 11 Plan. See Order Approving Disclosure Statement and Setting Objection and Voting

Deadlines; Notice of Final Hearing on Plan Confirmation at 1, filed May 9, 2018 (BR Doc.

378)("Order Approving Disclosure Statement").  The court also scheduled a confirmation hearing

to begin on June 13, 2018.  Order Approving Disclosure Statement at 2.  The Chapter 11 Plan and

---

[6]The Chapter 11 Plan defines the term "Administrative Claim" as "the collective reference
to all costs and expenses of administration of the Case with priority under [11 U.S.C. §§] 364(b)
and/or 507(a)(2)," including "any cost or expense . . . arising or allowable under [11 U.S.C. §]
503(b)." Chapter 11 Plan at 10.  Under § 503(b), taxes must be "incurred by the estate" to be
administrative expenses. 11 U.S.C. § 503(b)(1)(B)(i). "However, until the petition is filed, there
can be no estate[.]"  In re Sunnyside Coal Co., 146 F.3d 1273, 1278 (10th Cir. 1998). Thus, only
post-petition taxes can be administrative expenses.  See In re Sunnyside Coal Co., 146 F.3d at
1278.

Order setting the deadline and hearing were served on the Doña Ana County on May 11, 2018. Bankruptcy Record Vol. 2 at 68, 71, filed December 1, 2020 (Doc. 4). Doña Ana County did not object to the Plan, nor did it attend the confirmation hearing, which took place on June 13 and 14, 2018. See Entry of Hearing Minutes, filed June 13, 2018 (BR Doc. 442); Entry of Hearing Minutes, filed June 14, 2018 (BR Doc. 443).

On June 14, 2018, the Bankruptcy Court entered an order confirming the Chapter 11 Plan with modifications. See Bankruptcy Record Vol. 2 at 83-120 (Doc. 4)("Confirmation Order, BR Vol. 2"). The Confirmation Order does not modify the March 14, 2018 Bar Date for Governmental Units, which had expired three months earlier. See generally, Confirmation Order, BR Vol. 2 at 83-120. It set a shorter Administrative Claims Bar Date, however, requiring notices of most administrative claims to be filed within fifteen days after the Confirmation Order's entry. See Confirmation Order, BR Vol. 2 at 87, 91.

Doña Ana County states it "has no record of actually receiving the confirmation order until its counsel, the Doña Ana County attorney, retrieved it from the Bankruptcy Court docket in late 2019." Opening Brief of Appellant Doña Ana Co[u]nty Treasurer at 12, filed January 14, 2021 (Doc. 15). The Bankruptcy Court confirmed that "[i]t is not clear the County received notice of the confirmation order." Bankruptcy Record Vol. 3 at 202 n.3; see also Bankruptcy Record Vol. 4 at 121-22 (listing Confirmation Order recipients); Certificate of Notice, filed June 16, 2018 (BR Doc. 441)(same). Doña Ana employee Terri Barraza attests, however, that, on July 27, 2018, Doña Ana County "received notice of 'Motion for Order Entering Final Decree Closing Case.'"[7]

---

[7]According to Barraza, upon receiving notice of the motion, she "unflagged" Valley Dairies' real and personal property accounts with Doña Ana County, which she had previously "flagged" to "suspend enforcement, including billing and collection activities, in an effort to comply with the automatic stay." Bankruptcy Record Vol. 3 at 112, 114.

Bankruptcy Record Vol. 3 at 112, 114.  Among other things, the Motion for Order Entering Final Decree Closing Case on July 27, 2018 to which Barraza appears to refer[8] provides that "[t]he Plan in this case was confirmed pursuant to an order of this court entered on *June 14, 2018*."[9]  Motion for Final Decree at 1, filed July 5, 2018 (BR Doc. 472)("Motion for Final Decree")(emphasis in original)).  Notably, the Motion for Final Decree also states that "the time for appeal from said Order has expired" and that "[t]he deadline for submission of applications for administrative claims . . . has passed."  Motion for Final Decree at 1-2.

On July 31, 2018, Mr. Marcus accepted appointment as successor liquidating trustee.  See Statement of Acceptance of Appointment of Successor Liquidating Trustee, filed July 31, 2018 (BR Doc. 493).  Later that summer, he sold Valley Dairies' livestock at auction.  Bankruptcy Record Vol. 3 at 101.  In March 2019, he sold Valley Dairies' real property and Doña Ana County was paid all taxes, interest, and penalties owed on that property at closing.  See Bankruptcy Record Vol. 3 at 22, 203.  As a result, all amounts listed in Doña Ana County's Proof of Claim were paid except for $8,877.22, "which," Mr. Marcus later acknowledged, "was identified as a tax on

---

[8]The Motion for Final Decree was filed about three weeks prior to July 27, 2018; and, the actual Final Decree, which was entered on July 27, 2018, would seem to have been the more appropriate event to trigger the "unflagging" of Debtor's accounts.  Motion for Final Decree at 1, filed July 5, 2018 (BR Doc. 472)("Motion for Final Decree"); Final Decree, filed July 27, 2018 (BR Doc. 491)("Final Decree").  Nevertheless, Dona Ana County does not dispute that it received notice of the Motion for Final Decree on July 27, 2018, and the Court therefore accepts that it in fact did so.  See Appellant's Response to Appellee's Objection to PFRD at 9-10, filed September 15, 2021 (Doc. 21)("Appellant's Response").

[9]The Motion for Final Decree is not, as the County notes, included in the record on appeal. Appellant's Response at 10.  The Court takes judicial notice, however, of the Motion for Final Decree as a court record in the underlying proceedings.  See Gee v. Pacheco, 627 F.3d at 1191; In re McDaniel, 973 F.3d at 1087 n.3.

personal property." Bankruptcy Record Vol. 3 at 21-22.  Also in March 2019, Barraza notified Mr. Marcus by e-mail that Doña Ana County "still had a claim for personal property taxes far in excess of $8,877.22."  Bankruptcy Record Vol. 3 at 23, 114.  "The claims asserted . . . in the email were for 2017 as well as 2018 personal property taxes on the cattle which had been sold the previous year."  Bankruptcy Record Vol. 3 at 23.  Doña Ana County did not file a claim for the taxes referenced in the e-mail or seek any other relief from the Bankruptcy Court at that time.  See Bankruptcy Record Vol. 3 at 203.

After extensive negotiations, Mr. Marcus reached a settlement with Valley Dairies' largest secured creditor in May 2019, which the Bankruptcy Court approved in July 2019.  Bankruptcy Claim No. 37-1 at 1-2, filed December 19, 2017 (Claims Register Doc. 37-1); Successor Trustee Marcus' Motion to Approve Settlement Agreement at 6, filed May 3, 2019 (BR Doc. 531); Bankruptcy Record Vol. 2 at 176-209; Bankruptcy Record Vol 3 at 203.  Mr. Marcus then raised the issue of whether Doña Ana County should be allowed to claim personal property taxes, interest, and fees on Valley Dairies' livestock for 2017 and 2018, which the Court will refer to as the "2017 Livestock Taxes" and "2018 Livestock Taxes," respectively.  Specifically, on November 22, 2019, Mr. Marcus filed a Partial Objection to Claim asserting that Doña Ana County's "claim had been paid except for $8,877.22," and asking the Bankruptcy Court "to declare that the estate owed [the County] $8,877.22 or less." Bankruptcy Record Vol 3 at 21-26, 203.

On December 23, 2019, Doña Ana County filed a response in opposition to Mr. Marcus' Partial Objection to Claim.  See Bankruptcy Record Vol 3 at 29-40.  In it, Doña Ana County asked the Bankruptcy Court to treat the response as a motion for enlargement of time to amend its Proof of Claim and file an administrative claim under rule 9006(b)(1) of the Federal Rule of Bankruptcy Procedure.  See Bankruptcy Record Vol 3 at 29.  Doña Ana County attached to the response tax

bills showing Debtor owed it $471,816.85 in personal property taxes, interest, and fees for 2016, 2017, and 2018.[10]  See Bankruptcy Record Vol. 3 at 35-40.  With the Bankruptcy Court's leave, Doña Ana County filed an amended response on February 24, 2020.  See Bankruptcy Record Vol. 3 at 56, 59-65.

The parties also filed cross-motions for summary judgment regarding the 2017 and 2018 Livestock Taxes.  See Bankruptcy Record Vol 3 at 66-103.  After reviewing these motions, the Bankruptcy Court "determined that proper procedure was for the County to seek permission to amend its proof of claim and/or apply for an administrative expense."  Bankruptcy Record Vol. 3 at 137-38, 203.  Doña Ana County filed a Motion to Amend Proof of Claim and Application for Administrative Expenses on June 12, 2020; Mr. Marcus objected on July 1, 2020; and, Doña Ana County replied on July 15, 2020.  See Bankruptcy Record Vol. 3 at 140-83, 203-04.

After a hearing, the Bankruptcy Court issued the Opinion and Order from which Doña Ana County now appeals.  See Bankruptcy Record Vol. 3 at 201-16.  In its Opinion, the Bankruptcy Court first concludes that the 2017 Livestock Taxes were incurred before Debtor filed its petition and thus Doña Ana County's claim for these taxes is a pre-petition claim subject to the Bar Date for Governmental Units.  See Bankruptcy Record Vol. 3 at 204-05.  The Bankruptcy Court then rejected Doña Ana County's arguments that its claim for the 2017 Livestock Taxes should be

---

[10]Mr. Marcus has never disputed that Dona Ana County should be paid $8,877.22 for the 2016 personal property taxes included in its timely Proof of Claim.  See Bankruptcy Record Vol. 3 at 21-25.  In fact, in his Objection, he states that these taxes were "paid with interest in 2020." Objection of Appellee Robert Marcus at 11, filed September 10, 2021 (Doc. 19).  It is unclear whether Mr. Marcus objects to paying fees on these taxes.  However, the Bankruptcy Court did not address this issue in its Opinion and Dona Ana County has not raised it on appeal.  Bankruptcy Record Vol. 3 at 201-13; Appellee's Brief, filed January 14, 2021 (Doc. 15); Appellant's Reply Brief, filed March 15, 2021 (Doc. 17); Appellant's Response, filed September 15, 2021 (Doc. 21). As such, the Court does not consider it here. Rather, like Magistrate Judge Khalsa, the Court limits its review to Dona Ana County's claims for the 2017 and 2018 Livestock Taxes.

allowed either as an amendment relating back to Doña Ana County's timely Proof of Claim or as a new claim filed out of time.  See Bankruptcy Record Vol. 3 at 205-10.  Finally, the Bankruptcy Court rejected the County's argument that the 2018 Livestock Taxes should be paid as a post-petition administrative expense, because Doña Ana County did not file a notice of claim for these taxes by the Administrative Claims Bar Date.  See Bankruptcy Record Vol. 3 at 210-12.  The Bankruptcy Court therefore denied Doña Ana County's Motion to Amend Proof of Claim and Application for Administrative Expenses and disallowed its claims for the 2017 and 2018 Livestock Taxes.  See Bankruptcy Record Vol. 3 at 212-13, 216.

Doña Ana County filed its Notice of Appeal in the Court on October 5, 2020, and filed its opening brief on January 14, 2021.  See Notice of Appeal, filed October 5, 2020 (Doc. 1); Appellant's Brief, filed January 14, 2021 (Doc. 15).  In its brief, Doña Ana County first argued that the Bankruptcy Court erred when it concluded that the 2017 Livestock Taxes were incurred pre-petition.  Appellant's Brief at 23-26.  Rather, Doña Ana County continued, the Bankruptcy Court should have allowed Doña Ana County to claim the 2017 Livestock Taxes as a post-petition administrative expense.  Appellant's Brief at 23-26.  In the alternative, Doña Ana County argued that if the 2017 Livestock Taxes were incurred pre-petition, then the Bankruptcy Court should have allowed it to either amend its timely Proof of Claim to include the 2017 Livestock Taxes or file a new claim for these taxes out of time based on excusable neglect. Appellant's Brief at 26-30. Finally, Doña Ana County argued that its claims for the 2017 and 2018 Livestock Taxes should have been allowed as post-petition administrative claims because the Administrative Claims Bar Date did not apply to Doña Ana County, and even if it did, the Bankruptcy Court should not have enforced it because to do so violates 11 U.S.C. § 503(b)(1)(D).  Appellant's Brief at 31-35.  On February 25, 2021, Mr. Marcus filed his response brief in opposition to Doña Ana County's appeal;

and, on March 15, 2021, Doña Ana County filed its reply.  See Appellee's Brief by Robert Marcus, filed February 25, 2021 (Doc. 16); Appellant's Reply Brief by Doña Ana County Treasurer, filed March 15, 2021 (Doc. 17).

On August 27, 2021, Magistrate Judge Khalsa entered her PFRD recommending that the Court affirm the Bankruptcy Court's decision in part, reverse it in part, and remand the matter for further consideration.  See PFRD.  Magistrate Judge Khalsa recommended affirmance of the Bankruptcy Court's determination that the 2017 Livestock Taxes were incurred pre-petition and so could not be claimed as a post-petition administrative expense.  PFRD at 8-12.  Magistrate Judge Khalsa also recommended affirmance of the Bankruptcy Court's determination that Doña Ana County could not amend its timely Proof of Claim to add the 2017 Livestock Taxes, because its claim for these taxes is a new one that does not relate back to its original filing.  PFRD at 12-19.

However, Magistrate Judge Khalsa recommended reversal of the Bankruptcy Court's refusal to allow Doña Ana County to file a new claim for the 2017 Livestock Taxes out of time because the Bankruptcy Court relied on two clearly erroneous factual findings to support the refusal.  PFRD at 19-27.  Magistrate Judge Khalsa also recommended reversal of the Bankruptcy Court's rejection of the County's administrative claim for the 2018 Livestock Taxes as untimely.  PFRD at 27-36. Magistrate Judge Khalsa further recommended that the Court remand this matter to the Bankruptcy Court for it to:  (1) revisit, without relying on erroneous factual findings, whether Doña Ana County should be allowed to file a claim for the 2017 Livestock Taxes out of time based on excusable neglect; and, (2) determine whether there is any basis other than the Administrative Claims Bar Date on which to reject the County's claim for the 2018 Livestock Taxes.  PFRD at 26-27, 36.

Mr. Marcus timely objected to the PFRD on September 10, 2021.  <u>See</u> Objection.  Mr. Marcus does not object to the portions of the PFRD recommending affirmance of the Bankruptcy Court's Opinion and Order.  <u>See</u> Objection.  However, he does object to the portions recommending reversal. Objection at 8-25.  In addition, he objects that Magistrate Judge Khalsa "minimize[d] or ignore[d] . . . critical facts."  Objection at 5.  Doña Ana County filed a response in opposition to Mr. Marcus' Objection on September 15, 2021, and Mr. Marcus filed a reply in support of it on September 17, 2021.  <u>See</u> Appellant's Response to Appellee's Objection to PFRD at 9-10, filed September 15, 2021 (Doc. 21)("Appellant's Response"); Reply in Support of Objection to PFRD, filed September 17, 2021 (Doc. 22).  Doña Ana County has not objected to any portion of the PFRD, and the time for it to do so has expired.  <u>See</u> PFRD at 37.

**LAW REGARDING OBJECTIONS TO PROPOSED FINDINGS AND <u>RECOMMENDATIONS</u>.**

District courts may refer dispositive motions to a Magistrate Judge for a recommended disposition.  <u>See</u> Fed. R. Civ. P. 72(b)(1) ("A magistrate judge must promptly conduct the required proceedings when assigned, without the parties' consent, to hear a pretrial matter dispositive of a claim or defense . . . .").  Rule 72(b)(2) governs objections: "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2).  Finally, when resolving objections to a Magistrate Judge's proposal, "the district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to.  The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  Fed. R. Civ. P. 72(b)(3).  Similarly, 28 U.S.C. § 636 provides:

A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1).

"The filing of objections to a magistrate's report enables the district judge to focus attention on those issues -- factual and legal -- that are at the heart of the parties' dispute." United States v. One Parcel of Real Property, With Buildings, Appurtenances, Improvements, and Contents, 73 F.3d 1057, 1059 (10th Cir. 1996)("One Parcel")(quoting Thomas v. Arn, 474 U.S. 140, 147 (1985)). As the United States Court of Appeals for the Tenth Circuit has noted, "the filing of objections advances the interests that underlie the Magistrate's Act,[11] including judicial efficiency." One Parcel, 73 F.3d at 1059 (citing Niehaus v. Kan. Bar Ass'n, 793 F.2d 1159, 1165 (10th Cir. 1986); United States v. Walters, 638 F.2d 947, 950 (6th Cir. 1981)).

The Tenth Circuit held "that a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." One Parcel, 73 F.3d at 1060. "To further advance the policies behind the Magistrate's Act, [the Tenth Circuit], like numerous other circuits, have adopted 'a firm waiver rule' that 'provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions.'" One Parcel, 73 F.3d at 1059 (quoting Moore v. United States, 950 F.2d 656, 659 (10th Cir. 1991). In addition to requiring specificity in objections, the Tenth Circuit has stated that "[i]ssues raised for the first time in objections to the magistrate judge's recommendation are

---

[11]Congress enacted the Federal Magistrate's Act, 28 U.S.C. §§ 631-39, in 1968.

deemed waived." Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996). See United States v. Garfinkle, 261 F.3d 1030, 1030-31 (10th Cir. 2001)("In this circuit, theories raised for the first time in objections to the magistrate judge's report are deemed waived."). In an unpublished opinion, the Tenth Circuit states that "the district court correctly held that [a petitioner] had waived [an] argument by failing to raise it before the magistrate." Pevehouse v. Scibana, 229 F. App'x 795, 796 (10th Cir. 2007)(unpublished).[12]

In One Parcel, the Tenth Circuit, in accord with other Courts of Appeals, expanded the waiver rule to cover objections that are timely but too general. See One Parcel, 73 F.3d at 1060. The Supreme Court of the United States of America-- in the course of approving the United States Court of Appeals for the Sixth Circuit's use of the waiver rule -- has noted:

> It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings. The House and Senate Reports accompanying the 1976 amendments do not expressly consider what sort of review the district court should perform when no party objects to the magistrate's report. See S. Rep. No. 94-625, pp. 9-10 (1976) (hereafter Senate Report); H. R. Rep. No. 94-1609, p. 11 (1976), U.S. Code Cong. & Admin. News 1976, p. 6162 (hereafter House Report). There is nothing in those Reports, however, that demonstrates an intent to require the district court to give any more consideration to the magistrate's

---

[12]Pevehouse v. Scibana is an unpublished opinion, but the Court can rely on an unpublished Tenth Circuit opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A)("Unpublished decisions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005). The Court concludes that Pevehouse v. Scibana has persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

report than the court considers appropriate.  Moreover, the Subcommittee that drafted and held hearings on the 1976 amendments had before it the guidelines of the Administrative Office of the United States Courts concerning the efficient use of magistrates.  Those guidelines recommended to the district courts that "[w]here a magistrate makes a finding or <u>ruling</u> on a motion or an issue, his determination should become that of the district court, unless specific objection is filed within a reasonable time."  <u>See</u> Jurisdiction of United States Magistrates, Hearings on S. 1283 before the Subcommittee on Improvements in Judicial Machinery of the Senate Committee on the Judiciary, 94th Cong., 1st Sess., 24 (1975) (emphasis added) (hereinafter Senate Hearings).  The Committee also heard Judge Metzner of the Southern District of New York, the chairman of a Judicial Conference Committee on the administration of the magistrate system, testify that he personally followed that practice.  <u>See</u> <u>id.</u>, at 11 ("If any objections come in, . . . I review [the record] and decide it.  If no objections come in, I merely sign the magistrate's order.").  The Judicial Conference of the United States, which supported the *de novo* standard of review eventually incorporated in § 636(b)(1)(C), opined that in most instances no party would object to the magistrate's recommendation, and the litigation would terminate with the judge's adoption of the magistrate's report.  <u>See</u> Senate Hearings, at 35, 37.  Congress apparently assumed, therefore, that any party who was dissatisfied for any reason with the magistrate's report would file objections, and those objections would trigger district court review.  There is no indication that Congress, in enacting § 636(b)(1)(C), intended to require a district judge to review a magistrate's report to which no objections are filed.  It did not preclude treating the failure to object as a procedural default, waiving the right to further consideration of any sort.  We thus find nothing in the statute or the legislative history that convinces us that Congress intended to forbid a rule such as the one adopted by the Sixth Circuit.

<u>Thomas v. Arn</u>, 474 U.S. at 150-52 (emphasis in original)(footnotes omitted).

The Tenth Circuit also has noted, "however, that '[t]he waiver rule as a procedural bar need not be applied when the interests of justice so dictate.'"  <u>One Parcel</u>, 73 F.3d at 1060 (quoting <u>Moore v. United States</u>, 950 F.2d 656, 659 (10th Cir. 1991)("We join those circuits that have declined to apply the waiver rule to a pro se litigant's failure to object when the magistrate's order does not apprise the pro se litigant of the consequences of a failure to object to findings and recommendations.").  <u>Cf.</u> <u>Thomas v. Arn</u>, 474 U.S. at 154 (noting that, while "[a]ny party that desires plenary consideration by the Article III judge of any issue need only ask," a failure to object "does not preclude further review by the district judge, sua sponte or at the request of a party,

under a de novo or any other standard"). In One Parcel, the Tenth Circuit noted that the district judge had decided sua sponte to conduct a de novo review despite the lack of specificity in the objections, but the Tenth Circuit held that it would deem the issues waived on appeal because it would advance the interests underlying the waiver rule. See 73 F.3d at 1060-61 (citing cases from other Courts of Appeals where district courts elected to address merits despite potential application of waiver rule, but Courts of Appeals opted to enforce waiver rule).

Where a party files timely and specific objections to the magistrate judge's PFRD, "on [] dispositive motions, the statute calls for a *de novo* determination, not a *de novo* hearing." United States v. Raddatz, 447 U.S. 667, 674 (1980). "[I]n providing for a '*de novo* determination' rather than *de novo* hearing, Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations." United States v. Raddatz, 447 U.S. at 676 (quoting 28 U.S.C. § 636(b); citing Mathews v. Weber, 423 U.S. 261, 275 (1976)). The Tenth Circuit requires a "district court to consider relevant evidence of record and not merely review the magistrate judge's recommendation," when conducting a de novo review of a party's timely, specific objections to the magistrate judge's report. In re Griego, 64 F.3d 580, 583-84 (10th Cir. 1995). "When objections are made to the magistrate's factual findings based on conflicting testimony or evidence . . . . the district court must, at a minimum, listen to a tape recording or read a transcript of the evidentiary hearing." Gee v. Estes, 829 F.2d 1005, 1008-09 (10th Cir. 1987).

A district court must "clearly indicate that it is conducting a de novo determination" when a party objects to the magistrate's report "based upon conflicting evidence or testimony." Gee v. Estes, 829 F.2d at 1009. On the other hand, a district court fails to meet 28 U.S.C. § 636(b)(1)'s requirements when it indicates that it gave "considerable deference to the magistrate's order."

Ocelot Oil Corp. v. Sparro Indus., 847 F.2d 1458, 1464 (10th Cir. 1988).  A district court need not, however, "make any specific findings; the district court must merely conduct a *de novo* review of the record."  Garcia v. City of Albuquerque, 232 F.3d 760, 766 (10th Cir. 2000).  "[T]he district court is presumed to know that de novo review is required. . . .  Consequently, a brief order expressly stating the court conducted de novo review is sufficient."  Northington v. Marin, 102 F.3d 1564, 1570 (10th Cir. 1996)(citing In re Griego, 64 F.3d at 583-84).  "[E]xpress references to de novo review in its order must be taken to mean it properly considered the pertinent portions of the record, absent some clear indication otherwise."  Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42, 8 F.3d 722, 724 (10th Cir. 1993).  The Tenth Circuit previously has held that a district court properly conducted a de novo review of a party's evidentiary objections when the district court's "terse" order contained one sentence for each of the party's "substantive claims" and did "not mention his procedural challenges to the jurisdiction of the magistrate to hear the motion."  Garcia v. City of Albuquerque, 232 F.3d at 766.  The Tenth Circuit has explained that brief district court orders that "merely repeat the language of § 636(b)(1) to indicate its compliance" are sufficient to demonstrate that the district court conducted a de novo review:

> It is common practice among district judges in this circuit to make such a statement and adopt the magistrate judges' recommended dispositions when they find that magistrate judges have dealt with the issues fully and accurately and that they could add little of value to that analysis.  We cannot interpret the district court's statement as establishing that it failed to perform the required de novo review.

In re Griego, 64 F.3d at 584.

Notably, because a district court may place whatever reliance it chooses on a Magistrate Judge's PFRD, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate," 28 U.S.C. § 636(b)(1).  "Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a

magistrate's proposed findings and recommendations."   United States v. Raddatz, 447 U.S. at 676)(emphasis omitted).   See Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42, 8 F.3d at 724-25 (holding that the district court's adoption of the magistrate judge's "particular reasonable-hour estimates" is consistent with the de novo determination that 28 U.S.C. § 636(b)(1) and United States v. Raddatz require).

Where no party objects to the Magistrate Judge's PFRD, the Court has, as a matter of course in the past and in the interests of justice, reviewed the Magistrate Judge's recommendations.   In Pablo v. Soc. Sec. Admin., No. CIV 11-0132 JB/ACT, 2013 WL 1010401, at *6 (D.N.M. Feb. 27, 2013)(Browning, J.), the plaintiff did not respond to the Magistrate Judge's PFRD and thus waived his right to appeal the recommendations, but the Court nevertheless conducted a review.   See 2013 WL 1010401, at *4.   The Court generally does not, however, "review the PF&RD de novo, because the parties have not objected thereto, but rather review[s] the recommendations to determine whether they are clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion." Pablo v. Soc. Sec. Admin., 2013 WL 1010401, at *6.   The Court, thus, does not determine independently what it would do if the issues had come before the Court first, but rather adopts the PFRD where "[t]he Court cannot say that the Magistrate Judge's recommendation . . . is clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion."   Pablo v. Soc. Sec. Admin., 2013 WL 1010401, at *6.   See Alexandre v. Astrue, No. CIV 11-0384 JB/SMV, 2013 WL 1010439, at *4 (D.N.M. Feb. 27, 2013)(Browning, J.)("The Court rather reviewed the findings and recommendations of the Honorable Stephan M. Vidmar, United States Magistrate Judge, to determine if they are clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion.   The Court determines that they are not, and will therefore adopt the PFRD.").   This review, which is deferential to the Magistrate Judge's work when there is no objection, nonetheless

provides some review in the interest of justice, and seems more consistent with the waiver rule's intent than no review at all or a full-fledged review. Accordingly, the Court considers this standard of review appropriate. See Thomas v. Arn, 474 U.S. at 151 ("There is nothing in those Reports, however, that demonstrates an intent to require the district court to give any more consideration to the magistrate's report than the court considers appropriate."). The Court is reluctant to have no review at all if its name is going at the bottom of the order adopting the Magistrate Judge's PFRD.

## ANALYSIS

I.   **THE COURT WILL ADOPT THE PORTIONS OF THE PFRD RECOMMENDING AFFIRMANCE OF THE BANKRUPTCY COURT'S DETERMINATIONS THAT: (i) THE 2017 LIVESTOCK TAXES WERE INCURRED PRE-PETITION; AND (ii) THE COUNTY'S CLAIM FOR THESE TAXES CANNOT BE ADDED BY AMENDMENT.**

Neither party has objected to the portion of Magistrate Judge Khalsa's PFRD recommending affirmance of the Bankruptcy Court's determination that the 2017 Livestock Taxes were incurred pre-petition and thus cannot be claimed as an administrative expense. See PFRD at 8-12. Likewise, neither party has objected to the portion of the PFRD recommending affirmance of the Bankruptcy Court's determination that Doña Ana County cannot amend its timely Proof of Claim to add the 2017 Livestock Taxes, because its claim for these taxes is a new one that does not relate back to the original filing. See PFRD at 12-19.

The Court has reviewed these portions of the PFRD and cannot say they are "clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion." In re Young, 546 B.R. at 222-23. The Court will therefore adopt these portions of the PFRD, and will affirm the Bankruptcy Court's Opinion and Order to the extent the court held that: (i) the 2017 Livestock Taxes were incurred pre-petition and thus cannot not be claimed as a post-petition administrative expense under 11 U.S.C. §§ 503(b)(1) and 507(a)(2); and, (ii) Doña Ana County cannot amend its

timely Proof of Claim to add the 2017 Livestock Taxes because its claim for these taxes is "truly new." In re Unioil, Inc., 962 F.2d 988, 992 (10th Cir. 1992) ("In re Unioil II").

II.     **THE COURT WILL ADOPT THE PORTION OF THE PFRD RECOMMENDING REVERSAL OF THE BANKRUPTCY COURT'S REFUSAL TO ALLOW DOÑA ANA COUNTY TO FILE A NEW CLAIM FOR THE 2017 LIVESTOCK TAXES OUT OF TIME.**

Mr. Marcus objects to the portion of the PFRD recommending reversal of the Bankruptcy Court's refusal to allow Doña Ana County to file a new claim for the 2017 Livestock Taxes out of time. See Objection at 8-18. As a preliminary matter, the Court notes that Mr. Marcus, in his Objection, repeatedly suggests Magistrate Judge Khalsa ignored the untimeliness of the County's claim for these taxes and the effect of that untimeliness. Objection at 6 (stating that the PFRD "ignores" the County's "considerable temporal delay" in pursuing the 2017 Livestock Taxes); Objection at 7 (stating that the PFRD "fail[s] to discuss the critical effect of the Governmental Bar Date" on the County's claim for these taxes); Objection at 12 (stating that the PFRD "fails to recognize that the Governmental Bar Date controls the timeliness and due process questions with respect to any 'new' prepetition proof of claim").

Mr. Marcus' suggestions on this point are not well taken. By considering whether the Bankruptcy Court properly refused to allow Doña Ana County to file its new claim for the 2017 Livestock Taxes "out of time," Magistrate Judge Khalsa plainly acknowledged the untimeliness of the claim and the effect of that untimeliness.[13] PFRD at 19-27. First, it is self-evident that a party need only seek leave to file a claim "out of time" where the claim is otherwise untimely.

_____

[13] Likewise, Magistrate Judge Khalsa acknowledged the untimeliness of Dona Ana County's claim for the 2017 Livestock Taxes and the effect of that untimeliness by considering whether the claim related back to the County's "timely" Proof of Claim and could therefore be added to the Proof of Claim by amendment. See PFRD at 12-19.

Second, Magistrate Judge Khalsa addressed the effect of Doña Ana County's untimeliness by applying rule 9006 of the Federal Rules of Bankruptcy Procedure to Doña Ana County's request for leave to pursue its claim. See PFRD at 19-27.  Under Bankruptcy Rule 9006, a court in its discretion may permit an untimely act to be done "on motion made after the expiration of the specified period" if the failure to act in a timely manner "was the result of excusable neglect." Fed. R. Bankr. P. 9006(b)(1).  See also Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 389 (1993) ("Pioneer") ("The 'excusable neglect' standard of [Bankruptcy] Rule 9006(b)(1) governs late filings of proofs of claim in Chapter 11 cases[.]").

As a related preliminary matter, the Court must point out that Mr. Marcus' citations to Federal Rule of Bankruptcy Procedure 3002(c)(1) regarding the effect of the County's untimeliness are inapposite.  Objection at 12, 13 n.7.  Bankruptcy Rule 3002(c)(1) does, as Mr. Marcus observes, provide that the time for a governmental unit to file a proof of claim may be extended "only upon motion of the governmental unit made before expiration of the period for filing a timely proof of claim." Fed. R. Bankr. P. 3002(c)(1);  Objection at 12.  Further, Bankruptcy Rule 9006(b)(3) provides that "[t]he court may enlarge the time for taking action under" Rule 3002(c) "only to the extent and under the conditions stated in [that rule]." Fed. R. Bankr. P. 9006(b)(3).

By its express terms, however, Bankruptcy Rule 3002(c) only applies in cases under Chapters 7, 12, and 13. Fed. R. Bankr. P. 3002(c). In this case, Debtor filed its voluntary petition under Chapter 11, and Bankruptcy Rule 3003(c) therefore applies. (BR Doc. 1; Doc. 4 at 1; Doc. 5 at 201-02); Pioneer, 507 U.S. at 389 n.4. Bankruptcy Rule 3003(c) provides in pertinent part that courts "for cause shown may extend the time within which proofs of claim or interest may be filed." Fed. R. Bankr. P. 3003(c)(3).  And, as the Supreme Court has observed, "Rule 9006(b) does

not make [an] exception for Rule 3003(c)." Pioneer, 507 U.S. at 389 n.4. Consequently, Bankruptcy Rule 9006(b) authorizes courts to grant leave to file proofs of claim on motions made after the bar date has expired in cases under Chapter 11, though not in cases under Chapters 7, 12, and 13. Id. at 389; In re Wooten, 620 B.R. 351, 355 & n.3 (Bankr. D.N.M. 2020).

Turning to Mr. Marcus' substantive arguments regarding the 2017 Livestock Taxes, Mr. Marcus objects to Magistrate Judge Khalsa's proposal that the Bankruptcy Court made two clearly erroneous factual findings in refusing to allow Doña Ana County to file a new claim for these taxes out of time.  Objection at 8-18.  The two findings at issue are that:  (i) the County's timely Proof of Claim made no "mention of an unsecured priority claim for personal property taxes" and included no such taxes, (Doc. 5 at 204, 207-09 & n.9); and, (ii)  "[t]he County has never given any reason for its failure to file a claim for personal property taxes" and "has offered no justification" for failing to timely request an extension of time in which to do so, (id. at 209-10).  Objection at 20.  As explained below, notwithstanding Mr. Marcus' arguments to the contrary, the Court agrees with Magistrate Judge Khalsa that these two findings are clearly erroneous.

A bankruptcy court's factual findings "are reviewable only for clear error—in other words, with a serious thumb on the scale for the bankruptcy court." U.S. Bank Nat. Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC, — U.S. —, 138 S. Ct. 960, 966 (2018); see also In re Long, 843 F.3d 871, 873 (10th Cir. 2016) (bankruptcy court's "factual findings are reviewed for clear error"). "A finding of fact is clearly erroneous if it is without factual support in the record or if, after reviewing all of the evidence, [the Court is] left with the definite and firm conviction that a mistake has been made." In re Com. Fin. Servs., Inc., 427 F.3d 804, 810 (10th Cir. 2005).

With respect to the first finding at issue, *i.e.*, that the County's Proof of Claim neither mentioned nor included an unsecured, priority claim for personal property taxes, the Proof of Claim is part of the record and the Court has reviewed it carefully. (Doc. 3 at 3-31.) Although the Proof of Claim indicates the basis of the claim is real property and lists the entire amount as secured, it also indicates a portion of the claim consists of "[t]axes or penalties owed to governmental units" "*[e]ntitled to [p]riority*" under "11 U.S.C. § 507(a)(8)." (*Id.* at 3 (emphasis added).) Section 507(a)(8), in turn, enumerates "allowed *unsecured* claims of governmental units" entitled to priority, including claims for "a property tax incurred before the commencement of the case and last payable without penalty after one year before the date of the filing of the petition."[14] 11 U.S.C. § 507(a)(8)(B) (emphasis added). Thus, the Proof of Claim did in fact "mention . . . an unsecured priority claim," despite the Bankruptcy Court's finding that it did not. (Doc. 5 at 208 n.9.)

Mr. Marcus objects to Magistrate Judge Khalsa's presumption that the unsecured priority claim mentioned in the County's Proof of Claim was "'for [taxes on] personal property' given its unsecured nature."[15]   Objection at 10-12 & ns.5 & 6 (quoting PFRD at 21).   In this regard, he points out that an unsecured claim for real property taxes is hypothetically possible, *e.g.*, where the taxes owed exceed the real property's value.   Objection at 10 n.5.   In so arguing, however, Mr. Marcus ignores his admissions here and below that the Proof of Claim, though predominantly for

---

[14]None of the other "allowed unsecured claims of governmental units" listed in Section 507(a)(8) would apply to any of the taxes Debtor owed the County. *See generally* 11 U.S.C. § 507(a)(8).

[15]Under New Mexico law, real property taxes are secured by lien but personal property taxes are not. N.M. Stat. Ann. §§ 7-38-48, 7-38-53 to 7-38-59.

real property taxes, also included $8,877.22 for personal property taxes. <u>See</u>, <u>e.g.</u>, Bankruptcy

Vol. 3 at 22-24, 126; Bankruptcy Vol. 4 at 25; Objection at 11. This $8,877.22 is the only portion

of the claim that was not paid by the sale of Debtor's real property at closing and is thus the only

unsecured portion of the claim. Bankruptcy Vol. 3 at 21-22. Magistrate Judge Khalsa properly

relied on Mr. Marcus' own admissions as well as the unsecured nature of the claim in concluding

that the unsecured, priority claim mentioned and included in the Proof of Claim was for personal

property taxes. <u>See</u> PFRD at 21. In short, as Magistrate Judge Khalsa proposed to find, the

Bankruptcy Court clearly erred when it found that the Proof of Claim did not mention or include

an unsecured, priority claim for personal property taxes.

Mr. Marcus also challenges Magistrate Judge Khalsa's PFRD with respect to the second

factual finding at issue, <u>i.e.</u>, that Doña Ana County never gave any reason for its failure to act in a

timely manner. Objection at 13-18. However, as Magistrate Judge Khalsa observed, Doña Ana

County indubitably offered several reasons and justifications below for its failure to timely file a

claim for the 2017 Livestock Taxes or seek an extension of time in which to do so. PFRD at 21-

22. Magistrate Judge Khalsa described these reasons as follows:

- In its initial response to Mr. Marcus' Partial Objection to Claim, the County explained that: (1) it had no record of receiving either Debtor's and Unsecured Creditors Committee's Joint Plan (BR Doc. 167) or the Confirmation Order; (2) the Chapter 11 Plan addressed priority tax claims in one boilerplate paragraph; and, (3) due to staff turnover following an election, a layperson prepared the County's Proof of Claim without the assistance of counsel experienced in bankruptcy procedures. (Doc. 5 at 31-33.)

- In its amended response, the County added that the Proof of Claim only included taxes, interest, and fees through 2016 because Debtor's 2017 personal property taxes had not yet accrued when the County filed the Proof of Claim; and, the County believed the 2017 Livestock Taxes were a post-petition administrative expense for which it did not need to make a claim pursuant to 11 U.S.C. § 503(b)(1)(D). (<u>Id.</u> at 59-65.)

- In its Motion for Summary Judgment and Motion to Amend Proof of Claim and Application for Payment of Administrative Expenses, the County reiterated the explanations in its amended response and added that its Proof of Claim had included the most up-to-date information available at the time of filing. (*Id.* at 66-75, 140-52.)

PFRD at 21-22 (footnotes omitted).

Mr. Marcus devotes a considerable portion of his Objection to arguing that the foregoing reasons are "specious" and do not demonstrate excusable neglect.[16] Objection at 13-18. He is certainly free to make these arguments to the Bankruptcy Court on remand. Like Magistrate Judge Khalsa, this Court does not decide whether the County's proffered reasons establish excusable neglect, merely finding them sufficiently plausible in the aggregate to merit the Bankruptcy Court's consideration in the first instance. However, by the very act of attacking the County's proffered reasons for its dilatory conduct, Mr. Marcus acknowledges that these reasons exist.

Mr. Marcus does broadly object that "none of [the County's] superficial reasons or justifications address why it did not file an additional claim or amend [its original Proof of Claim] before the [Bar Date for Governmental Units]." Objection at 17. The Court disagrees. In particular, the Court notes Doña Ana County's asserted belief that its claim for the 2017 Livestock Taxes was a post-petition administrative claim for which it did not need to file a proof of claim pursuant to 11 U.S.C. § 503(b)(1)(D). Bankruptcy Record Vol 3 at 63. This belief plainly operates to explain why Doña Ana County did not pursue its claim in Bankruptcy Court until Mr. Marcus filed his partial objection to the claim. Again, the Court intends to remand this matter to the

---

[16] Mr. Marcus makes at least one of these arguments—*i.e.*, that the layperson who prepared the County's timely Proof of Claim was a supervisor who had adequate knowledge of bankruptcy procedures—for the first time in his Objection. (Doc. 19 at 15.) This argument is therefore waived for purposes of the County's appeal. *Marshall*, 75 F.3d at 1426; *Garfinkle*, 261 F.3d at 1031.

Bankruptcy Court so that it may decide in the first instance whether the County's proffered reasons for its lengthy delay demonstrate excusable neglect. But the Court cannot countenance the clearly erroneous finding that no such reasons were proffered at all.

In his Objection, Mr. Marcus does not expressly argue that the Bankruptcy Court's factual errors were harmless. Nevertheless, as Magistrate Judge Khalsa recognized, this Court "must disregard all errors and defects that do not affect any party's substantial rights," i.e., all errors that are "harmless." Fed. R. Civ. P. 61; Fed. R. Bankr. P. 9005[17]; In re Martinez, 126 F. App'x 890, 899 (10th Cir. 2005)("Federal Rule of Civil Procedure 61, incorporated in Federal Rule of Bankruptcy Procedure 9005, applies in determining whether an error in a bankruptcy proceeding is harmless."); see also Matter of Colo. Corp., 531 F.2d 463, 469 (10th Cir. 1976)(applying "harmless error rule" in bankruptcy appeal). Here, the Court agrees with Magistrate Judge Khalsa that the errors at issue are not harmless.

As noted above, Bankruptcy Rule 9006 provides that a court in its discretion may permit an untimely act to be done "on motion made after the expiration of the specified period" if the failure to act in a timely manner "was the result of excusable neglect." Fed. R. Bankr. P. 9006(b)(1). "The 'excusable neglect' standard of [Bankruptcy] Rule 9006(b)(1) governs late filings of proofs of claim in Chapter 11 cases[.]" Pioneer, 507 U.S. at 389. Interpreting this rule, the Supreme Court has held that,

> by empowering the courts to accept late filings 'where the failure to act was the result of excusable neglect,' Rule 9006(b)(1), Congress plainly contemplated that

---

[17]As Magistrate Judge Khalsa pointed out, "[t]hough Bankruptcy Rule 9005 incorporates Rule 61 in cases under the Bankruptcy Code, it adds that '[w]hen appropriate,' courts 'may order the correction of any error or defect or the cure of any omission which does not affect substantial rights.'" (Doc. 18 at 23 n.19 (quoting Fed. R. Bankr. P. 9005).) The Court does not decide whether it would be appropriate to order the correction of a harmless error here because the erroneous findings at issue were not harmless.

> the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control.[18]

Pioneer, 507 U.S. at 388.

The Court's determination of "what sorts of neglect will be considered 'excusable'. . . is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." Pioneer, 507 U.S. at 395. These circumstances include

> the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

Pioneer, 507 U.S. at 395. "[T]he four Pioneer factors do not carry equal weight; the excuse given for the late filing must have the greatest import." United States v. Torres, 372 F.3d 1159, 1163 (10th Cir. 2004) (quoting Graphic Comm'c'ns Int'l Union v. Quebecor Printing Providence, Inc., 270 F.3d 1, 5 (1st Cir. 2001)); see also City of Chanute, Kan. v. Williams Nat. Gas Co., 31 F.3d 1041, 1046 (10th Cir.1994) ("[F]ault in the delay remains a very important factor—perhaps the most important single factor—in determining whether neglect is excusable[.]").

As Magistrate Judge Khalsa explained in her PFRD,

> [i]n light of these standards, the [Bankruptcy Court's] factual errors . . . cannot be deemed harmless. The Bankruptcy Court expressly relied on its erroneous finding that "the County *has never given any reason* for its failure to file a claim for personal property taxes" in deeming the failure inexcusable. (Doc. 5 at 209 (emphasis added).) As such, it plainly and wholly failed to consider any of the explanations the County proffered in its analysis of this issue. Given that the County's explanations were at least facially plausible and were "perhaps the most

---

[18]According to Mr. Marcus, the *Pioneer* decision stands for the proposition that "excusable neglect does not encompass situations in which the failure to comply with a filing deadline is attributable to negligence." (Doc. 19 at 16.) Mr. Marcus is plainly mistaken on this point. As the *Pioneer* Court explained, the word "neglect" as used in Bankruptcy Rule 9006(b)(1) "encompasses both simple, faultless omissions to act and, more commonly, omissions caused by carelessness." *Pioneer*, 507 U.S. at 388.

important single factor" in the analysis, *City of Chanute*, 31 F.3d at 1046, the Bankruptcy Court's denial of their very existence cannot be characterized as harmless.

PFRD at 24.  Moreover, the Bankruptcy Court did not mitigate the harm caused by its erroneous failure to consider Doña Ana County's proffered reasons for delay by stating that "[t]he reason appears to be negligence."  Bankruptcy Vol. 3 at 209.  On the contrary, this vague and speculative statement merely begs the question what the actual, specific reasons for Doña Ana County's apparent negligence were and thus whether that negligence was excusable.

The Bankruptcy Court's error regarding the types of taxes included in Doña Ana County's Proof of Claim was not harmless, either.  Discussing this point, Magistrate Judge Khalsa noted that

> the Bankruptcy Court's erroneous finding regarding the contents of the County's Proof of Claim also played a role in its *Pioneer* analysis. 507 U.S. at 395. Specifically, in considering the *Pioneer* factor of "danger of prejudice to the nonmoving parties," the Bankruptcy Court found the County's claim for 2016 personal property taxes to be "new" even though these taxes were in fact included in its original Proof of Claim. (Doc. 5 at 209.) The inclusion of a second factual error in the Bankruptcy Court's *Pioneer* analysis makes it even more likely the County's substantial rights were affected. Taken together, the Bankruptcy Court's two erroneous factual findings prevented the court from properly exercising its discretion in weighing the *Pioneer* factors.

PFRD at 24-25 (footnotes omitted).

In addition, the Bankruptcy Court's erroneous finding that the Proof of Claim included no personal property taxes prevented the court from resolving a pertinent factual dispute.  PFRD at 24-25.  Mr. Marcus' Objection does not address, much less refute, this point.  <u>See</u> Objection at 9-12.  As Magistrate Judge Khalsa observed,

> [s]ome record evidence supports the County's position that the 2016 personal property taxes included in the Proof of Claim were for livestock, while other evidence supports Mr. Marcus' position that these taxes may have been for mobile homes. (Doc. 6 at 25, 36; *compare, e.g.*, Doc. 3 at 26-27 (tax bill attached to Proof

of Claim for "Parcel 3024115360180" referring to "Non-residential Improvement" and "Agricultural Land") *with* Doc. 5 at 35-36, 39-40 (tax bills attached to County's response to Mr. Marcus' claim objection for "Parcel 3024115360180" referring to "Cattle," "Dairy," and "Equine"); *compare also* Doc. 15 at 16 (asserting that 2016 personal property taxes included in Proof of Claim were on "cattle . . . represented as Parcel No. 3024115360180") *with* Doc. 16 at 14 ("The record has not elucidated the basis for the [2016] personal property taxes; however, it is possibly based on the two mobile homes that were located on the real property.").

> The Bankruptcy Court's error in finding that the Proof of Claim included no personal property taxes at all precluded it from determining whether the 2016 personal property taxes in the Proof of Claim were for livestock. This, in turn, precluded the Bankruptcy Court from accurately assessing the degree of similarity between the 2016 personal property taxes and the 2017 Livestock Taxes and thus whether the former provided Mr. Marcus and unsecured creditors with some degree of timely notice that the County would later try to collect the latter. The Bankruptcy Court should have resolved these issues before weighing the *Pioneer* prejudice factor. (Doc. 5 at 209-10.)

PFRD at 25-26 (footnote omitted).

The Court, as a reviewing court, may not "decide factual issues not addressed by the bankruptcy court." In re Robinson, 987 F.2d 665, 669 (10th Cir. 1993). Also, it would be more appropriate for the Bankruptcy Court in the first instance to weigh the record evidence it erroneously disregarded in exercising its discretion under Pioneer, 507 U.S. at 380. For all of these reasons, the Court will: (i) overrule Mr. Marcus' Objection to the portion of the PFRD recommending reversal of the Bankruptcy Court's refusal to allow Doña Ana County to file a new claim for the 2017 Livestock Taxes out of time; (ii) adopt this portion of the PFRD and reverse the Bankruptcy Court's decision on this point; and, (iii) remand this matter to the Bankruptcy Court for further consideration. On remand, the Bankruptcy Court should revisit whether to allow Doña Ana County to file its claim out of time based on excusable neglect, and in so doing should address the parties' factual dispute regarding whether the personal property taxes included in the Proof of

Claim were for livestock, and assess the County's proffered reasons for failing to act in a timely manner.

### A. THE COURT WILL ADOPT THE PORTION OF THE PFRD RECOMMENDING REVERSAL OF THE BANKRUPTCY COURT'S REJECTION OF THE COUNTY'S CLAIM FOR THE 2018 LIVESTOCK TAXES AS UNTIMELY.

Finally, Mr. Marcus objects to the portion of Magistrate Judge Khalsa's PFRD addressing the County's administrative claim for the 2018 Livestock Taxes.[19] Objection at 18-25. The record reflects that Doña Ana County did not begin to pursue this claim in Bankruptcy Court until December 23, 2019 at the earliest, when it responded in opposition to Mr. Marcus' Partial Objection to Claim. Bankruptcy Record Vol. 3 at 29-40. This was nearly 18 months after the Administrative Claims Bar Date in the Confirmation Order.[20] Bankruptcy Record Vol. 2 at 87, 91.) Nevertheless, Magistrate Judge Khalsa proposed to find that the Bankruptcy Court erred in rejecting the County's claim as untimely. The Court will set out Magistrate Judge Khalsa's reasoning at some length, because it is pertinent to a clear understanding of Mr. Marcus' objections.

Initially, Magistrate Judge Khalsa pointed out that, under Section 503(b)(1)(D) of the Bankruptcy Code, "a governmental unit shall not be required to file a request for the payment of

---

[19]The parties agree that the County's claim for the 2018 Livestock Taxes is a claim for a post-petition administrative expense under 11 U.S.C. §§ 503(b)(1)(B)(i) and 507(a)(2). Objection at 18-25; Appellant's Response at 14-15.

[20]As previously noted, the Confirmation Order set an Administrative Claims Bar Date of 15 days after the order's entry. Bankruptcy Record Vol. 2 at 87, 91. The Confirmation Order was entered on June 14, 2018, making the Administrative Claims Bar Date June 29, 2018. Bankruptcy Record Vol. 2 at 87, 91.

an expense . . . as a condition of its being an allowed administrative expense." 11 U.S.C. §

503(b)(1)(D); PFRD at 28-29.  As Magistrate Judge Khalsa observed,

> [t]he Bankruptcy Court expressly found, and Mr. Marcus does not dispute, that applying the Administrative Claims Bar Date to bar the County's post-petition tax claim conflicts with Section 503(b)(1)(D). (Doc. 5 at 211; Doc. 16 at 35.) Nevertheless, the Bankruptcy Court concluded that the bar date overrides Section 503(b)(1)(D) because the Supreme Court has "held that a properly noticed and confirmed plan is binding on the noticed parties even if the plan contains provisions contrary to the Bankruptcy Code." (Doc. 5 at 211 (citing [*United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 276 (2010)])[.])

PFRD at 28-29 (footnote omitted).

However, Magistrate Judge Khalsa went on to state that, "[i]n the unique circumstances

presented here, the Court disagrees that the Administrative Claims Bar Date overrides Section

503(b)(1)(D) pursuant to *Espinosa*." PFRD at 29.  Magistrate Judge Khalsa described the relevant

particulars of the <u>Espinosa</u> decision as follows:

> In *Espinosa*, the bankruptcy court confirmed a plan that discharged interest on a student loan. 559 U.S. at 264. Contrary to the Bankruptcy Code, the bankruptcy court did so without first conducting an adversary proceeding to determine whether failure to discharge such interest "would impose an 'undue hardship' on the debtor and his dependents." *Id.* at 263-64. The student loan creditor "received notice of, but did not object to, the plan, and failed to file an appeal after the Bankruptcy Court subsequently confirmed the plan." *Id.* at 264. Years later, the creditor sought relief from the confirmed plan under [Federal] Rule [of Civil Procedure] 60(b)(4). *Id.*

> The *Espinosa* Court explained that "[a] judgment is not void . . . simply because it is or may have been erroneous," and "a motion under Rule 60(b)(4) is not a substitute for a timely appeal." 559 U.S. at 270 (quotation marks omitted). Rather, "Rule 60(b)(4) applies only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard." *Id.* at 271. On the record before it, the Supreme Court concluded that though the bankruptcy court erred in confirming the plan, its error did not render the plan void because the error was not jurisdictional and the creditor was afforded due process. *Id.* at 273-74. Thus, the Court found the creditor was not entitled to relief under Rule 60(b)(4). *Id.* at 276.

PFRD at 29-30.

Magistrate Judge Khalsa then explained that, "[c]ontrary to the Bankruptcy Court's decision, <u>Espinosa</u> and its progeny actually support the County's request for relief from the Administrative Claims Bar Date" under Rule 60(b)(4).[21]  PFRD at 30.

> The *Espinosa* Court expressly limited its holding to orders confirming the discharge of student loan debt in Chapter 13 proceedings.  *Id.* at 273 n.10. Specifically, in Footnote 10, the Court observed that
>
>> student loan debt *is* dischargeable in a Chapter 13 proceeding if a court makes a finding of undue hardship. In contrast, other provisions in Chapter 13 provide that certain other debts are *not* dischargeable under *any* circumstances. We express no view on the conditions under which an order confirming the discharge of one of these types of debt could be set aside as void.
>
> *Id.* (emphases in original) (citations omitted). In so stating, the *Espinosa* Court implicitly recognized that jurisdictional and/or due process concerns may render a confirmed plan void when the plan violates a Bankruptcy Code provision that is absolute, versus one that is conditional.
>
> Based on the due process concerns Footnote 10 tacitly acknowledged, lower courts have refused to enforce boilerplate terms of a confirmed plan or discharge order that violate an absolute provision of the Bankruptcy Code. . . . Likewise, here, the broad and general language of the Administrative Claims Bar Date—which never expressly states that it applies to governmental entities' post-petition tax claims—seems inadequate to give sufficient notice to the County that it overrides the unqualified mandate of Section 503(b)(1)(D).

PFRD at 30-31 (footnotes omitted).

Magistrate Judge Khalsa also noted that her "concerns regarding adequate notice are significantly heightened in this case because the record does not show the County was ever served with notice or a copy of the Bankruptcy Court's June 2018 Confirmation Order."  PFRD at 32.  In this regard, Magistrate Judge Khalsa explained that

---

[21]Neither side has objected to Magistrate Judge Khalsa's proposal to consider the County's request for relief from the Administrative Claims Bar Date pursuant to Rule 60(b)(4), and the Court agrees that this rule is the appropriate procedural vehicle for the County's request.

> [a] fundamental right guaranteed by the Constitution is the opportunity to be heard when a property interest is at stake. Specifically, the [bankruptcy] reorganization process depends upon all creditors and interested parties being properly notified of *all vital steps in the proceeding* so they may have the opportunity to protect their interests.

> *Reliable Elec. Co. v. Olson Const. Co.*, 726 F.2d 620, 623 (10th Cir. 1984) (emphasis added); *see also In re Unioil*, 948 F.2d 678, 683–84 (10th Cir. 1991) ("*In re Unioil I*") (though creditor had actual knowledge of bankruptcy proceedings, its claims could not be discharged where "it did not receive any formal notice of the deadline for filing proofs of claim, the time for filing objections to the reorganization plan, or the confirmation hearing").

> Federal Rule of Bankruptcy Procedure 2002 provides that "the clerk, or some other person as the court may direct, shall give . . . all creditors . . . notice by mail of . . . entry of an order confirming a [Chapter 11] plan[.]" Fed. R. Bankr. P. 2002(f)(7). There is no indication in the record that the County was given the notice Rule 2002 requires. Further, the Confirmation Order was certainly a "vital step[] in the proceeding," of which the County needed to be notified to provide it with "the opportunity to protect [its] interests." *Reliable Elec. Co.*, 726 F.2d at 623; *see also In re Arch Wireless*, 332 B.R. 241, 251 (Bankr. D. Mass. 2005), *subsequently aff'd sub nom. In re Arch Wireless, Inc.*, 534 F.3d 76 (1st Cir. 2008) ("[I]f a creditor is not given adequate notice of . . . the order confirming a plan in a Chapter 11 case, the creditor may not be bound by the plan provisions and its claim is not discharged."). Without knowing if or when the Bankruptcy Court had confirmed the Chapter 11 Plan, the County could not even determine what the Administrative Claims Bar Date actually was, much less if or when it needed to file an appeal seeking relief from that bar date.

PFRD at 33-34 (footnotes omitted).  For all of these reasons, Magistrate Judge Khalsa proposed to find that applying the Administrative Claims Bar Date to bar the County's administrative claim for the 2018 Livestock Taxes would violate due process and to that extent the bar date is void under Rule 60(b)(4).  PFRD at 34.

In objecting to this portion of the PFRD, Mr. Marcus does not dispute that applying the Administrative Claims Bar Date to bar the County's post-petition tax claim conflicts with Section 503(b)(1)(D).  Objection at 18-25.  Nevertheless, Mr. Marcus contends Doña Ana County is not entitled to relief from the Administrative Claims Bar Date under Rule 60(b)(4) because "a properly

noticed and confirmed plan is binding on the noticed parties even if the plan contains provisions contrary to the Bankruptcy Code," "the [Chapter 11] Plan was properly noticed and confirmed," and "no due process issues exist."  Objection at 18, 20.

There are two major problems with Mr. Marcus' position. The first problem is that the Chapter 11 Plan was not, in fact, "properly . . . confirmed," Objection at 18, because there is no record Doña Ana County was served with notice or a copy of the Confirmation Order as required by Bankruptcy Rule 2002(f)(7).  Notably, in his Objection, Mr. Marcus fails to point to any such record.  See Objection.  Instead, he relies on the fact that Doña Ana County _did_ receive timely notice of the Chapter 11 Plan, the deadline to object to it, and the confirmation hearing, yet did not object to the plan or attend the hearing.  Objection at 21-22.  However, the notices Doña Ana County timely received do not alleviate the due process concerns Magistrate Judge Khalsa identified.  In particular, none of these notices informed Doña Ana County of the date the Confirmation Order was entered, which Doña Ana County needed to know in order to calculate the Administrative Claims Bar Date and the deadline for filing an appeal.

Attempting to address this problem, Mr. Marcus points out that the Motion for Final Decree, of which Doña Ana County was notified on July 27, 2018, _did_ provide the Confirmation Order's entry date.  Objection at 7-8, 24; see Motion for Final Decree at 1.  Mr. Marcus makes this argument for the first time in his Objection, and as such, it should be deemed waived. See Marshall, 75 F.3d at 1426; Garfinkle, 261 F.3d at 1031.  Moreover, even if it were not waived, the argument would be unavailing.  By the time Doña Ana County received notice of the Motion for Final Decree, the Administrative Claims Bar Date and the deadline to appeal the Confirmation Order had both expired.  Motion for Final Decree at 1-2.  Thus, even assuming notice of the motion could be construed to provide Doña Ana County with notice of these critical deadlines, it did not do so

in time for Doña Ana County to comply with them.  As such, the fact that Doña Ana County received notice of the Motion for Final Decree fails to alleviate the due process concerns Magistrate Judge Khalsa identified.

The second problem with Mr. Marcus' position lies in his argument that application of the Administrative Claims Bar Date to Doña Ana County's post-petition tax claim raises no due process concerns, because the bar date language "was specific" and "clear" and "expressly" informed Doña Ana County of how its claim was to be treated.  Objection at 20-22.  This argument is also without merit. The Chapter 11 Plan indicated that the Administrative Claims Bar Date applied to

> all costs and expenses of administration of the Case with priority under Sections 364(b) and/or 507(a)(2) of the Bankruptcy Code, including without limitation any cost or expense of administration of the Bankruptcy Case arising or allowable under Section 503(b) of the Bankruptcy Code, any actual and necessary post-Petition Date expenses of preserving the Debtor's estate and any actual and necessary post-Petition Date expenses of operating the business of the Debtor, including any compensation or reimbursement of expenses to the extent arising or allowable under Sections 330 and 331 of the Bankruptcy Code and any fees or charges assessed against the Debtor's estate under Section 1930 of title 28 of the United States Code.

Bankruptcy Record Vol. 2 at 10.

Were it not for Section 503(b)(1)(D), which unconditionally prohibits requiring a governmental entity to file a request for payment of an administrative expense allowable under Section 503(b)(1)(B), the Court might well agree with Mr. Marcus that the plan adequately informed Doña Ana County that its post-petition tax claim was subject to the Administrative Claims Bar Date. However, Section 503(b)(1)(D) does exist, and yet the plan did not specifically contradict it, e.g., by stating that the bar date applied to a governmental entity's request for payment

of an administrative expense under Section 503(b)(1)(B).[22]  Taken together, the Chapter 11 Plan's lack of specificity and Section 503(b)(1)(D)'s absolute and specific prohibition create a significant ambiguity.

Further, other plan provisions exacerbate that ambiguity. The plan provides that Mr. Marcus' "rights, responsibilities and duties" include "preparing tax returns and processing payment of taxes owed by Valley Dairies[23] or the Liquidating Trustee."  Bankruptcy Record Vol. 2 at 37.  It also grants Mr. Marcus "all powers and duties as set forth in the Liquidating Trust Agreement," which in turn makes Mr. Marcus "responsible for payments . . . of any taxes imposed on the Liquidating Trust or its assets."  Bankruptcy Record Vol. 2 at 39, 62; see also Bankruptcy Record Vol. 2 at 61 (directing Mr. Marcus to "pay . . . any and all taxes imposed on the Liquidating Trust").  None of these provisions condition payment of post-petition property taxes on compliance with the Administrative Claims Bar Date. Thus, as Magistrate Judge Khalsa observed, "these provisions further erode any notice the plan otherwise might have given Doña Ana County that the Administrative Claims Bar Date would apply to it despite Section 503(b)(1)(D)."  PFRD at 32.

For all of the foregoing reasons, the Court agrees with Magistrate Judge Khalsa that applying the Administrative Claims Bar Date to bar the County's administrative claim for the 2018 Livestock Taxes would violate due process and to that extent the bar date is void under Rule 60(b)(4). The Court will therefore:  (i) overrule Mr. Marcus' Objection to the portion of the PFRD

---

[22]The County's post-petition tax claim falls under Section 503(b)(1)(B)(i), which refers to "any tax . . . incurred by the estate, whether secured or unsecured, including property taxes for which liability is in rem, in personam, or both[.]" 11 U.S.C. § 503(b)(1)(B)(i).

[23]This provision, incidentally, contradicts Mr. Marcus' contention that the plan only requires him to pay "[t]axes of the [liquidating t]rust" and "[a]llowed [c]laims of the Debtor." Objection at 24-25.

proposing to find that the Bankruptcy Court erred in rejecting the County's post-petition tax claim as untimely; (ii) adopt this portion of the PFRD and reverse the Bankruptcy Court's decision on this point; and, (iii) remand this matter so that the Bankruptcy Court may consider whether there is any basis other than the bar date on which to reject the County's administrative claim for the 2018 Livestock Taxes in whole or in part. If not, the claim should be allowed.

**IT IS ORDERED** that: (i) the Court hereby overrules Mr. Marcus' Objection, filed September 10, 2021 (Doc. 19); (ii) the Court adopts Magistrate Judge Khalsa's PFRD (Doc. 18); (iii) the Court affirms the Opinion and Order of the Bankruptcy Court, filed September 18, 2020 (Doc. 5) to the extent the court held that the 2017 Livestock Taxes were incurred pre-petition and so cannot be claimed as a post-petition administrative expense; (iv) the Court affirms the Bankruptcy Court's decision to the extent the court held that the County's claim for these taxes is a new one that cannot be added by amendment; (v) the Court reverses the Opinion and Order of the Bankruptcy Court to the extent the Bankruptcy Court relied on two clearly erroneous factual findings in refusing to allow Doña Ana County to file a new claim for the 2017 Livestock Taxes out of time based on excusable neglect; (vi) the Court remands this matter to the Bankruptcy Court so that it may revisit whether to allow Doña Ana County to file its claim for these taxes out of time based on excusable neglect, in light of the reasons Doña Ana County provided for its failure to act in a timely manner; (vii) in doing so, the Bankruptcy Court should also address the parties' factual dispute regarding whether the personal property taxes included in Doña Ana County's timely Proof of Claim were for livestock; and (viii) the Court reverses the Bankruptcy Court's Opinion and Order to the extent the Bankruptcy Court rejected Doña Ana County's administrative claim for the 2018 Livestock Taxes as untimely, and remands this matter to the Bankruptcy Court for it to

consider whether there is any basis other than the Administrative Claims Bar Date on which to reject this claim; if there is no other basis, the claim should be allowed.


UNITED STATES DISTRICT JUDGE


*Counsel:*

Frederick D. Kennon
    Deputy County Attorney
Dona Ana County Attorney's Office
Las Cruces, New Mexico

-- and --

Shay Elizabeth Meagle
Moses, Dunn, Farmer & Tuthill, P.C.
Albuquerque, New Mexico

*Attorneys for the Appellant*

Michael Keeley
Clark Hill Strasburger – Dallas
Dallas, Texas

-- and --

Kevin Harvey Morse
Clark Hill PLC
Chicago, Illinois

-- and --

Paul M. Fish
Modrall Sperling Roehl Harris & Sisk PA
Albuquerque, New Mexico

*Attorneys for the Appellee and Debtor*